Thomas Edward MANLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–99–038–CR.

Court of Appeals of Texas,
Waco.

June 21, 2000.

John D. Nation, Dallas, for appellant.

Joe F. Grubbs, County and Dist. Atty., Cynthia W. Hellstern, Asst. County and Dist. Atty., Waxahachie, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## O P I N I O N

BILL VANCE, Justice.

Thomas Manley was convicted of and placed on community-supervision probation for the offense of deadly conduct. *See* TEX. PEN.CODE ANN. § 22.05 (Vernon 1994). His appeal asserts that the court erred in failing to admonish him on the dangers and disadvantages of self-representation prior to the beginning of trial.[1] Because we agree, we will reverse the judgment and remand this cause for a new trial.

### FACTS

On October 28, 1994, Manley called David Mathis, an electrician, and asked him to hook up a spa. Mathis went to Manley's home the next day to do the work. He returned again on October 30 to complete the job. Although Mathis originally quoted Manley $130 for the job, he told Manley on October 30 that it would cost more because the job was more involved than he thought and took extra time and supplies. Once the job was completed, Mathis told Manley that he would need a city permit before the spa could be used. According to Mathis, Manley then pulled out a "derringer type" pistol, pointed it at Mathis, and stated he was being overcharged and was not going to pay. Manley told Mathis that he had three seconds to get off his property. Mathis left, went to a nearby store, and called the police.

### ADMONISHMENTS

Manley's first issue asserts that the court failed to admonish him on the dangers and disadvantages of self-representation prior to the beginning of trial. He contends that the admonishments given to him were deficient in two respects: (1) they did not inform him of the specific dangers and disadvantages of self-representation, and (2) they were not given until after he had begun representing himself.

 The Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution provide that a defendant in a criminal trial has the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. However, this right to counsel may be waived, and the defendant may choose to represent himself at trial. *Faretta v. California*, 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975). Although the right to self-representation is absolute, a waiver of the right to counsel will not be "lightly inferred," and the courts will indulge every reasonable presumption against the validity of such a waiver. *George v. State*, 9 S.W.3d 234, 236 (Tex.App.—Texarkana 1999, no pet.) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), and *Jordan v. State*, 571 S.W.2d 883, 884 (Tex.Crim.App.1978)).

 How does a court decide whether a valid waiver of counsel exists? *Faretta* requires that (1) the appellant make a "knowing and intelligent" waiver; and (2) the appellant must be made aware of the "dangers and disadvantages of self-representation." *Id.* (citing TEX.CODE CRIM. PROC. ANN. art. 1.051 (Vernon Supp.1999)); *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541. To decide whether a defendant's waiver is knowing and intelligent, the court must make an inquiry, evidenced by the record, which shows that the defendant has suffi-

---

1. He also complains that the evidence is factually insufficient to support the verdict, an issue we do not reach.

cient intelligence to demonstrate a capacity to waive his right to counsel and the ability to appreciate the practical disadvantage he will confront in representing himself. *George*, 9 S.W.3d at 237 (citing *Archie v. State*, 799 S.W.2d 340, 344 (Tex. App.—Houston [14th Dist.] 1990), *aff'd*, 816 S.W.2d 424 (Tex.Crim.App.1991)). The court must determine not only that the defendant wishes to waive his right to counsel, but that he understands the consequences of such waiver. *Id.*

■ Although it is not mandatory that the warnings be given in writing, we have previously held that the record must show that the defendant understands the consequences of his waiver. *Goffney v. State*, 812 S.W.2d 351, 352 (Tex.App.—Waco 1991), *aff'd*, 843 S.W.2d 583 (Tex.Crim. App.1992). It is not enough that the record show conclusions by the trial court that the defendant is aware of the dangers and disadvantages of self-representation.

In *Goffney*, the only references to the defendant's self-representation appeared in the docket sheet, the judgment, and the sentence. The docket sheet stated that the defendant appeared *pro se*, waived counsel and waived the record. *Goffney v. State*, 843 S.W.2d 583, 584 (Tex.Crim.App. 1992). The judgment and sentence stated that the defendant "knowingly, intelligently and voluntarily waived his right to counsel." *Id.* The Court of Criminal Appeals held that this language was insufficient and affirmed our reversal of the case.

■ Here, the record is not completely silent, but the references to Manley's decision to proceed without counsel are few. The following exchange occurred between the court and Manley prior to the beginning of the voir dire examination of the jury panel:

The Court: Mr. Manley, it's my understanding that you wish to waive your rights to have an attorney represent you, and you are representing yourself; is that correct, sir.

Manley: That's correct.

The Court: And under the law we call that pro se.

Manley: Yes.

The Court: You are representing yourself pro se?

Manley: Yes, sir.

The Court: And you are ready to go forward at this time?

Manley: Yes, sir.

The Court: The State has the burden of proof so it gets to go first. Ms. Hellstern, whenever you are ready you may begin your jury selection.

After voir dire, but prior to opening statements, the Court made the following admonishments:

The Court: Yesterday morning we selected the jury in this case, and at that time you requested your right to be able to represent yourself without an attorney, and I respected your wishes. I also advised you and warned you of any dangers in representing yourself. We are about ready to start the jury trial now, and you will be given [sic] an opening statement and proceed into testimony. And once again, I want to advise you that you do have a right to get an attorney and have that attorney represent you here in court at any criminal proceedings including this trial. Do you understand that?

Manley: I do understand that.

The Court: Do you understand that if you are poor or indigent or unable to employ an attorney, the law requires that I appoint you an attorney, and I will do so if you are indigent. You understand that?

Manley: Yes, I do.

The Court: And you are not claiming to be indigent at this time.

Manley: No, Your Honor.

The Court: You understand that there are certain dangers in trying to undertake representing yourself here during this jury trial today.

Manley: Yes, I do.

The Court: I will need to hold you to the same procedural, evidentiary, and legal standing that I will hold an attorney.

Manley: Yes.

The Court: Now once, again, having advised you and readvised you of the dangers of self-representation, at this time do you still wish to represent yourself pro se in this case?

Manley: Yes, I do.

The trial then proceeded.[2]

The Court of Criminal Appeals has stated that sufficient admonishment must be reflected on the record *prior to any act of self-representation. Id.* It is clear that the record does not reflect sufficient admonishments prior to Manley's appearance *pro-se.* He questioned the jury during voir dire and attempted to make use of his peremptory strikes. Thus, regardless of whether the admonishments given after the jury had been selected were sufficient, they were too late. The court erred in failing to properly admonish Manley prior to any act of self-representation. *See id.*

Now we must consider the necessity of a harm analysis. We note that no harm analysis was done in *Goffney*; however, because it was decided prior to the adoption of the new appellate rules in 1997, we cannot rely on it. *George* was decided recently, yet the Texarkana Court reversed and remanded without a harm analysis. We can only assume that this is because they consider the error to be "structural." *See George*, 9 S.W.3d at 237.

■ No error, other than federal constitutional errors labeled as structural by the United States Supreme Court, *i.e.*, those involving "fundamental constitutional systemic requirements," is categorically immune to harmless error analysis. *Salinas v. State*, 980 S.W.2d 219, 219 (Tex.Crim. App.1998); *Foster v. State*, 8 S.W.3d 445, 446 (Tex.App.—Waco 1999, no pet.) (citing *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim.App.1999)). The Supreme Court has defined such requirements in part as those which, when denied, "defy analysis by 'harmless error' standards." *Foster*, 8 S.W.3d at 446 (citing *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991)). A complete denial of counsel falls within this category. *Id.*

■ Allowing a defendant to proceed *pro se* without properly determining whether he has knowingly and intelligently waived his right to counsel is as critical as forcing a defendant to proceed to trial without the presence of counsel. We believe that the failure to properly admonish a defendant on the dangers and disadvantages of self-representation is error involving "fundamental constitutional systemic requirements" and is categorically immune to a harmless error analysis. *See Faretta*, 422 U.S. at 816–23, 95 S.Ct. at 2532–35; *Salinas*, 980 S.W.2d at 219. Thus, we forego any attempt to apply Rule of Appellate Procedure 44.2 to this error. TEX. R.APP. P. 44.2.

We reverse the judgment and remand the cause for a new trial.

Dissenting opinion by Justice GRAY.

TOM GRAY, Justice, dissenting.

### THE RECORD

To reverse this case for a new trial I must presume that the trial court was trying to cause the record to reflect an event which had not occurred. Manley does not deny that the referenced event occurred. I will not make that presumption. The majority sets out the admonishments which were recorded in the reporter's record, so I will not repeat them. However, the important thing to note about those recorded admonishments is that they repeatedly refer to the trial court having previously been advised that the defendant was going to represent himself, to having previously admonished the defendant, and having previously concluded

---

**2.** No other admonishments appear in the record.

that the defendant had validly elected to exercise his right to self-representation. The references include the following:

1) It's my understanding that you wish to waive your rights.

2) Yesterday morning . . . I also advised you and warned you of any dangers in representing yourself . . .

3) Now once, again, having advised you and readvised you of the dangers of self-representation, at this time do you still wish to represent yourself pro se in this case? (To which Manley responded, "I do.")

Furthermore, it appears that something occurred earlier because a member on the jury panel asked the following during voir dire:

PROSPECTIVE JUROR: The other witness who is acting as his own counsel he can cross-examine other witnesses, right?

MS. HELLSTERN: Certainly.

PROSPECTIVE JUROR: Is he a lawyer?

MS. HELLSTERN: Mr. Manley? Not to my knowledge.

PROSPECTIVE JUROR: He has already been told about [sic] he has to be treated the same as an attorney? Does he have to know the law in order to—

MS. HELLSTERN: Everyone has a right to act as their own counsel if that [sic] what he chooses—

PROSPECTIVE JUROR: I know he has that right, but—

MS. HELLSTERN:— and they are also given certain warnings about the dangers of self-representation.

PROSPECTIVE JUROR: He has been warned. Okay.

This exchange indicates that the prospective juror observed something that was not recorded. But, why is this relevant? Because, if Manley had been previously admonished and the record was not made at the time, I see no problem with the trial court placing upon the record the events

that had previously occurred. *See* Tex. R.App. P. 33.2.

## GOFFNEY V. STATE

The majority opinion addresses the timeliness of the admonishments regarding pro se representation and bases its decision primarily on the following paragraph in *Goffney:*

The State also contends it is the responsibility of the party to request a record of the proceedings under Tex.R.App. P. Rule 11. While this is true, prior to any act of self-representation by the defendant, the record should reflect that the admonishments were given to the defendant. Had the admonishments been appropriately given, the defendant could not now complain of the absence of a record on appeal. The absence of evidence of admonishments being given to the defendant fails to meet the requirements of the Supreme Court.

*Goffney v. State,* 843 S.W.2d 583, 585 (Tex. Crim.App.1992) (citations omitted).

My interpretation of this paragraph results in an entirely different outcome than the majority. First, it is important to understand that *Goffney* is distinguishable from the case at hand. Unlike the present case, the complaint in *Goffney* was that the admonishments were not in the reporter's record and that the only indication that the admonishments had been given was in conclusory language in the judgment. Here, at the very least, the repetition of the admonishments that were given to Manley are part of the reporter's record on appeal.

Another fundamental problem with the majority's reliance upon *Goffney* is that the holding in *Goffney* addressed only the recording of the admonishments and not the timing of those admonishments. The holding is stated as follows: "Because the record does not contain the admonishments of the dangers and disadvantages of self-representation as required by *Faretta,* we affirm the judgment of the Court of Appeals." *Goffney,* 843 S.W.2d at 585. As stated above, there were no admonish-

ments regarding pro se representation in the record in *Goffney*. Thus, the timing of the admonishments was not an issue before the court and any reliance on *Goffney* to support that issue is misplaced.

Now, let us examine the second sentence in the paragraph from *Goffney*. It states: *"While this is true, prior to any act of self-representation by the defendant, the record should reflect that the admonishments were given to the defendant." Id.* (emphasis added). The majority interprets this as an absolute requirement that not only must the record reflect that the admonishments were given before any specific act of self-representation, but it must also be recorded in the record before any act of self-representation. Consider the difference that would result if the second sentence were stated as follows: *While this is true, the record should reflect that the admonishments were given to the defendant prior to any act of self-representation.* Any casual reader, and many technical writers, would not see a distinction. However, if the freedom of your client is dependant on this sentence, you may look at it more closely and, in my opinion, twist the meaning so that not only must the record reflect that the defendant was properly admonished before any act of self representation, but that the record at the time of the first act of self-representation already reflects that the admonishments have been given.

That this cannot be the law can be amply demonstrated using another method of admonishment. If the admonishment had been entirely in writing, signed by the defendant and delivered to the prosecuting attorney, the record would not reflect that the defendant had been adequately admonished until the written admonishments had been filed. If prior to the time that the written admonishments were actually filed, the self-represented defendant performed

some act of self-representation, would we hold that the written admonishments were not adequate to show a knowing and intelligent waiver? According to the twist that Manley puts on the second sentence, it would be required. I would not.

In fact, the procedural problem created by the majority opinion leads me to believe that it is not workable and cannot be what the Court of Criminal Appeals meant. All the Constitution requires is that the trial court give the admonishments when the defendant elects to represent himself. To require anything more specific in the way of procedural requirements, would impede the defendant's constitutional right to self-representation. *See Faretta v. California*, 422 U.S. 806, 818–820, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). In this case, the record reflects that the defendant was admonished[1], and the record also reflects that the defendant made a knowing and intelligent waiver of his right to counsel. Thus, I would uphold the validity of Manley's election of self-representation.

## WAIVER

In *Goffney*, the State argued that the reason the admonishments were not in the record was because no record had been made of them and that the self-represented defendant did not object to the failure to have the record reflect the admonishments when given. Any lawyer would have been required to make such an objection but it was determined that the self-represented defendant did not have to object, apparently because until he has validly waived his right to counsel he is not representing himself. This presents another common-sense problem in practice. If the defendant is not admonished until the middle of trial and at the time of admonishment elects to continue, he has

1. The State suggests that we can consider the fact that in 1982, Manley had previously represented himself in a jury trial and claimed on appeal that he was not adequately admonished of the dangers and disadvantages of self-representation. *Manley v. State*, 633

S.W.2d 881 (Tex.Crim.App.1982). The resolution of this issue is not necessary for me to reach the conclusions herein. On retrial, the trial court can certainly consider this fact when evaluating Manley's ability to waive counsel and represent himself.

then validly waived any objection that he could have made regarding the timing of the admonishments.

We would be presented with an entirely different issue if Manley had objected to the allegedly "untimely admonishment" at the time he was admonished and immediately sought to be represented by counsel or if he had at that time moved for a mistrial so that he could start the trial over with counsel. Neither of these events happened. Consequently, even if the admonishments in the record were the only ones given, Manley elected to continue to represent himself. At that point, having elected to represent himself, as with any defendant represented by counsel, he waived his opportunity to complain about the timeliness of the admonishment. Consequently, I would hold that Manley has failed to preserve this issue for our review. *See* Tex.R.App. P. 33.1(a).

### Harmless Error Analysis

Assuming the trial court did err and there was no waiver, the failure to timely admonish the defendant and record his decision is clearly subject to harmless error analysis. *See Cain v. State,* 947 S.W.2d 262 (Tex.Crim.App.1997). "[E]xcept for certain federal constitutional errors labeled by the Supreme Court as 'structural,' no error ... is categorically immune to a harmless error analysis." *Id.* at 264. "[I]t may be true that some kinds of errors ... will never be harmless ... and that some other kinds of errors will rarely be harmless. But, appellate courts should not automatically foreclose the application of the harmless error test to certain categories of error." *Id.* Accordingly, I would hold that the failure to timely admonish Manley is subject to harmless error review. Further, because at the time he was admonished he nevertheless elected to waive his right to counsel and represent himself in this instance, I would hold that the error, if any, was harmless.

### Conclusion

For the reasons stated above, I respectfully dissent.