Reversed and Remanded and Opinion filed April 25, 2006









Reversed and Remanded and Opinion filed April 25, 2006.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00998-CR

____________

 

JANET LORRAINE
WILLIAMS,
Appellant

 

V.

 

STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 2 & Probate Court

Brazoria County, Texas

Trial Court Cause No. 135322

 



 

O P I N I O N

Appellant, Janet Lorraine Williams, was
convicted by a jury of terroristic threat. Tex.
Penal Code ann. '22.07(a)(2) (Vernon Supp. 2005). The jury assessed appellant=s punishment at 30
days in the Brazoria County jail and a $1.00 fine. The sentence was suspended
and appellant was placed on community supervision for a period of six months.
Appellant appeals on the grounds that (1) the evidence is legally insufficient
to support the conviction; and (2) the trial court committed fundamental error
by failing to clarify and address the issue that appellant=s waiver of trial
counsel was voluntarily and intelligently waived. We reverse and remand.








Factual and
Procedural Background

Appellant=s son attended a
public elementary school located in Pearland, Texas. Appellant frequently ate
lunch with her son at the school. In early 2003, Lisa Welch was hired as a teacher=s assistant at the
school. Among Welch=s duties was the supervision of the
students eating their lunch in an assigned section of the school=s cafeteria.
During the spring of 2004, appellant became irritated with Welch=s supervision of
her son. Appellant made numerous complaints to the school=s administration
regarding Welch. Eventually, in an effort to resolve the situation, the school=s administration
arranged a conference on May 14, 2004 between appellant, Welch, and Liz Perdue,
an assistant principal at the school.

Welch testified that during the
conference, appellant became very irritated and irate. Welch testified
appellant told Welch to never speak to her child again and Ainvited me to, in
her words, a beat down in the parking lot. And then she threatened me again and
told me that if I ever spoke to her child again, that she would whip me.@ Welch told the
jury she was shocked by appellant=s threat, immediately
feared for her safety and thought appellant might Acome across the
table or come around and try to strike me.@ Welch further
testified that if there had not been a table and a door in the way, she would
have immediately fled the conference room.

Assistant Principal Perdue, a friend of
appellant=s, testified that during the conference,
appellant Astated that she didn=t care if the
police were called or the police were brought in. She wasn=t scared of that.
But that if [Welch] messed with her son or said anything to her son . . . she
made a threat. And I can=t remember her exact words, but it was
like, >I=ll beat you= or >I=ll whip your butt,= something like
that.@ Perdue also
testified she believed appellant can overreact in certain situations.








Carla Breaux, the school secretary, did
not participate in the conference but heard 
appellant state, as she was leaving the conference room: AStay away from my
child or I am going to whoop [sic] you.@ Appellant
testified at trial and admitted she told Welch Awhat she do [sic]
to my child, I would do to her.@ Appellant also testified
she lived across the street from the school. Appellant=s 17-year old
daughter testified appellant was very angry and upset with Welch. Appellant was
later charged by information for making a terroristic threat. See Tex. Penal Code ann. '22.07(a)(2). Appellant
pled not guilty.

On September 15, 2004, appellant appeared
at trial without counsel. Prior to the voir dire, there was a brief discussion
between the trial court and appellant regarding the decision to proceed pro
se: 

THE COURT:          Sarah, let=s go on the record.

Y=all weren=t able to work something out
between you?

MS.
WILLIAMS:     Oh, no. They wanted to
convict me.

THE COURT:          And you=re going to represent yourself?

MS.
WILLIAMS:     I would love to go before
you, Your Honor; but I have to represent myself.

THE COURT:          Cause number 135,322, State of Texas
versus Janet Lorraine Williams.

Ms. Williams, you=re charged with terroristic threat.
It=s a Class B misdemeanor, and that
has a range of punishment of up to a 2,000-dollar fine and up to six months in
jail or a combination of those two. Do you understand that?

MS.
WILLIAMS:     Yes, sir.

THE COURT:          All right. Now, let meBI=m going to go over a few things
with you about how the trial proceeds.

You do not have an attorney.

MS.
WILLIAMS:     Yes.

THE COURT:          Is that correct?

MS.
WILLIAMS:     Yes.

THE COURT:          Yes, that=s correct?

MS.
WILLIAMS:     Yes, that=s correct. I=m sorry.

THE COURT:          That=s all right.

And you are going to represent
yourself today?








MS.
WILLIAMS:     Yes, sir.

THE COURT:          And you understand you have an
experienced prosecutor up here?

MS. WILLIAMS:     I understand she=s tough. She is tough. She=s sweet, though; but she=s tough.

THE COURT:          But you insist on representing yourself?

MS. WILLIAMS:     I have to, Your Honor, because it=s the principle. That=s the only reason. If I was in the
wrong, I felt I was really in the wrong, I would take whatever punishment you
guys have for me.

THE COURT:          Well, I don=t know who is right or who is wrong, I don=t know a fact one. I=ll learn all about it just as quick
as the jury learns about it.

There=s a couple of things I want to
explain to you. You understand you have a right to an attorney?

MS. WILLIAMS:     Yes, sir.

THE COURT:          You understand the State can=t make you talk about the facts or
give upB

MS. WILLIAMS:     Yes.

THE COURT:          Have you tried to hire an attorney?

MS. WILLIAMS:     Well, I really can=t afford one right now is the honest
truth.

THE COURT:          Have you gone out there to try to hire an attorney?

MS. WILLIAMS:     I had an attorney for my child=s case not too long ago, and that
was kind of rough. Put me in a bind. And this all of a sudden began; so, I have
to do it on my own.

THE COURT:          If you are convictedBand let me explain how this works. The first phase, the
jury hears only evidence as to whether or not you=re guilty.

MS. WILLIAMS:     Yes.

This discussion continued a few moments later:

THE COURT:          You also have indicated that you wish to represent
yourself.

MS. WILLIAMS:     Correct.








THE COURT:          Correct? Even though I admonished you
that you have a right to an attorney?

MS. WILLIAMS:     Yes, sir.

Also, at some point during that day,
exactly when is unclear from the record, appellant executed a ADefendant=s Waiver of
Counsel@ which stated:

I, Janet L. Williams, have been
advised . . . by the Court of my right to representation by counsel in the
trial of the charge pending against me. I have been further advised that if I
am unable to afford counsel, one will be appointed for me free of charge.

I
understand that if a lawyer represented me in this case, the lawyer could
cross-examine the State=s witnesses, offer evidence on my
behalf, file motions and argue law before the Court, provide me with legal
advice, and, in general, do a better job of protecting my legal rights than I
could without the assistance of a lawyer.      

Understanding my right to have
counsel appointed for me free of charge if I am not financially able to employ
counsel, and of the risks and consequences of representing myself, I wish to
waive that right and request the Court to proceed with my case without an
attorney being appointed for me. I hereby waive my right to counsel.

 

The trial was to a jury. During the trial,
following appellant=s testimony that she was unemployed and
had recently filed for bankruptcy, in a conference out of the presence of the
jury, the trial court stated there had not been an application made for
appointed counsel and that the trial court had not received any financial
information about appellant. Following this, the trial court allowed the trial
to resume and, after hearing the evidence, the jury convicted appellant of
making a terroristic threat. The jury assessed appellant=s punishment at 30
days in the Brazoria County jail and a $1.00 fine. On September 16, 2004, the
trial court suspended the sentence and placed appellant on community
supervision for a period of six months. During the sentencing hearing, the
trial court finally admonished appellant that she had a right to have an
attorney appointed for her to handle any appeal if she could not afford to hire
one. On October 12, 2004, the trial court held an indigency hearing and the
court determined  appellant was indigent
and appointed appellate counsel for appellant.








Discussion

I. Terroristic Threat

In her first issue, appellant contends
there is legally insufficient evidence showing a threat to Welch that placed
her in imminent danger of serious bodily injury. Specifically, appellant argues
there is legally insufficient evidence to prove beyond a reasonable doubt that
(1) appellant intended to place Welch in fear of imminent serious bodily harm
because her threats to Welch were conditional threats of future violence; and
(2) appellant had the ability to inflict serious bodily harm on Welch. We disagree.

When reviewing legal sufficiency, we view
the evidence in the light most favorable to the verdict and determine whether a
rational trier of fact could have found the elements of the offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781,
61 L.Ed.2d 560 (1979); Cardenas v. State, 30 S.W.3d 384, 389 (Tex. Crim.
App. 2000). The critical inquiry is whether, after viewing the evidence, any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. McDuff v. State, 939 S.W.2d 607, 614, (Tex.
Crim. App.), cert. denied, 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75
(1997). This standard gives full play to the responsibility of the trier of
fact to resolve any conflicts in the testimony, to weigh the evidence, and to
draw reasonable inferences from basic facts to ultimate facts. Jackson,
443 U.S. at 319.








A person makes a terroristic threat if he
threatens to commit any offense involving violence to any person or property with
the intent to place any person in fear of imminent serious bodily injury. Tex. Pen. Code Ann. '22.07(a)(2). Imminent
means A[n]ear at hand;
mediate rather than immediate; close rather than touching; impending; on the
point of happening; threatening; menacing; perilous.@ In re A.C.,
48 S.W.3d 899, 904 (Tex. App.CFort Worth 2001,
pet. denied) (quoting BLACK=S LAW DICTIONARY
750 (6th ed. 1990)). The accused=s threat of
violence, made with the intent to place the victim in fear of imminent serious
bodily injury, is what constitutes the offense. Dues v. State, 634
S.W.2d 304, 305 (Tex. Crim. App. 1982). It is not necessary for the victim to
actually be placed in fear of imminent serious bodily injury or for the accused
to have the capability or the intention to actually carry out the threat. Id.
The offense is completed if the accused, by his threat, sought as a desired
reaction, to place a person in fear of imminent serious bodily injury.  Id. at 306.

Appellant argues that since her threats
were conditional on the future occurrence of several possible events, such as
Welch stepping out into the parking lot with appellant, or inflicting harm on
appellant=s son, the evidence is legally
insufficient as the serious bodily injury is not imminent. However,
conditioning a threat of harm on the occurrence of a future event does not
necessarily mean that the harmful consequences are not imminent. In re A.C.,
48 S.W.3d at 904. Thus, in gauging imminence, we must look to the proximity of
the threatened harm to the condition. Cook v. State, 940 S.W.2d
344, 348 (Tex. App.CAmarillo 1997, pet. ref=d). The focus of
the inquiry should be whether the victim was afraid of imminent serious bodily
injury at the time of the offense. Stults v. State, 23 S.W.3d 198, 205
(Tex. App.CHouston [14th Dist.] 2000, pet ref=d). The desired
and sought after reaction of the victim, regardless of whether the threat was
real or was carried out, is some evidence of the defendant=s intent to place
the victim in fear of imminent serious injury. See Hadnot v. State,
884 S.W.2d 922, 925B26 (Tex. App.CBeaumont 1994, no
pet.). The requisite intent can be inferred from the acts, words, and conduct
of the accused. Turner v. State, 600 S.W.2d 927, 929 (Tex. Crim.
App. 1980).








Welch testified appellant was very irate
and very irritated during the May 14, 2004 conference. Welch also testified
appellant threatened to beat her and that she was immediately afraid and feared
appellant would come over the conference table and strike her. Assistant
Principal Perdue, a friend of appellant=s, testified
appellant could overreact and had threatened Welch during the conference.
Appellant herself admitted she told Welch that appellant would do to Welch
whatever Welch did to appellant=s child. Finally,
appellant=s daughter testified appellant was very
upset and angry with Welch.  There is
ample evidence in the record for the jury to have found beyond a reasonable
doubt that appellant intended to place Welch in fear of imminent serious bodily
injury.

Appellant also argues the evidence is
legally insufficient as there was no evidence that, if an assault had occurred,
appellant could inflict serious bodily injury on Welch. Appellant misstates the
requirements of the offense. It is not necessary for the victim to actually be
placed in fear of imminent serious bodily injury or for the accused to have the
capability or the intention to actually carry out the threat. Dues v. State,
634 S.W.2d 304, 305 (Tex. Crim. App. 1982). The offense is completed if the
accused, by her threat, sought as a desired reaction, to place a person in fear
of imminent serious bodily injury.  Id.
at 306. We overrule appellant=s first issue.

II. Waiver of Right to Trial Counsel

In her second issue, appellant, citing
primarily to Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525,
45 L.Ed.2d 562 (1975), contends the trial court committed reversible error by
failing to clarify and address the issue that appellant=s waiver of trial
counsel was voluntarily and intelligently waived. Appellant also argues the
trial court erred by not adequately addressing appellant=s indigent status
and her right to appointed trial counsel. Appellant argues this failure of the
trial court to properly address appellant=s decision to
forego representation by trial counsel violated the Sixth and Fourteenth
Amendments to the United States Constitution and abridged appellant=s right to due
process. We agree with appellant that the trial court erred by failing to
properly address appellant=s indigent status
and her right to appointed trial counsel, and therefore appellant did not
knowingly, intelligently, and voluntarily waive her right to trial counsel.








The Sixth and Fourteenth Amendments to the
United States Constitution guarantee that a person brought to trial in any state
or federal court must be afforded the right to the assistance of counsel before
she can be validly convicted and punished by imprisonment. Faretta, 422
U.S. at 807. The United States Supreme Court also found in the Sixth Amendment
an independent constitutional right of an accused to conduct his own defense
and held that the right to self representation does not arise from one=s power to waive
assistance of counsel. Id. at 819-820, 95 S.Ct. at 2533. The Supreme Court,
citing to Illinois v. Allen, 397 U.S. 337, 350-351, 90 S.Ct. 1057, 1064,
25 L.Ed.2d 353 (Brennan, J., concurring), held that it is for the accused
personally to decide whether assistance of counsel in his particular case is to
his advantage, and his choice must be honored out of that respect for the
individual which is the lifeblood of the law and even if his choice may
ultimately be to his own detriment. Id. at 834, 95 S.Ct. at 2541.

However, to be constitutionally effective,
the decision to waive counsel must be made knowingly and intelligently, as well
as voluntarily. Tex. Code Crim. Proc.
Ann.  art. 1.051(g) (Vernon 2005);
Faretta, 422 U.S. at 835. AAlthough a
defendant need not himself have the skill and experience of a lawyer in order
competently and intelligently to choose self-representation, he should be made
aware of the dangers and disadvantages of self-representation, so that the
record will establish that >he knows what he
is doing and his choice is made with eyes open.=@ Faretta,
422 U.S. at 835 (quoting Adams v. United States ex rel. McCann, 317
U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).  To be made voluntarily, the decision must be
uncoerced. Collier v. State, 959 S.W.2d 621, 626 (Tex. Crim. App.
1997) (citing Godinez v. Moran, 509 U.S. 389, 401 n.12, 113 S.Ct.
2680, 125 L.Ed.2d 321 (1993)).








A trial court is not required to make a
formulaic inquiry into the defendant=s age, education,
background, or previous mental health history whenever an accused expresses a
desire to represent himself. Martin v. State, 630 S.W.2d 952, 954
(Tex. Crim. App. 1982). However, the record must contain proper admonishments
concerning pro se representation and any necessary inquiries of the
defendant, so that the trial court may make an assessment of the accused=s knowing exercise
of the right to defend himself. Goffney v. State, 843 S.W.2d 583, 584B85 (Tex. Crim.
App. 1992) (en banc) (citing Blankenship v. State, 673 S.W.2d
578, 583 (Tex. Crim. App. 1984)). The record must be sufficient for a reviewing
court to make an assessment that the defendant was made aware of the dangers
and disadvantages of the self-representation. Goffney, 843 S.W.2d at 585
(citing Faretta, 422 U.S. at 835; Johnson v. State, 760
S.W.2d 277, 279 (Tex. Crim. App. 1988)). To assure protection of a right
as fundamental as the right to be represented by counsel, courts indulge every
reasonable presumption against waiver of counsel. Trevino v. State, 555
S.W.2d 750, 751 (Tex. Crim. App. 1977) (citing Johnson v. Zerbst, 304
U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). A heavy burden rests
upon the prosecution to demonstrate an intelligent, voluntary, and knowing
waiver of constitutional rights, particularly as applied to the right to
retained or appointed counsel. Id. 

Appellant, citing to Tex. Code Crim. Proc. Ann. art.
1.051(h),[1]
argues the trial court erred in not addressing appellant=s indigent status
and appointing counsel for appellant.  Tex. Code Crim. Proc. Ann. art.
1.051(c) directs the trial judge to appoint counsel if an indigent defendant is
entitled to and requests appointed counsel. Tex.
Code Crim. Proc. Ann. art. 1.051(c) (Vernon 2005); Oliver v. State,
872 S.W.2d 713, 715 (Tex. Crim. App. 1994). This means an accused is not
entitled to have counsel provided at government expense unless she can prove
she is indigent. Oliver, 872 S.W.2d at 715. It also means counsel will
not be appointed to represent her unless she wishes it. Id.








The Texas statutory scheme, consistent
with the Sixth Amendment requirements, imposes upon the trial judge the
principle obligation to conduct such inquiry as may be necessary to determine
whether the accused desires and is eligible for the appointment of an attorney.
Oliver, 872 S.W.2d at 715B16. The appearance
of a criminal defendant in court without counsel necessitates an examination by
the trial judge to assure the defendant is actually aware of her right to
retain an attorney and to discover whether she intends to do so. Id. at
716. A trial judge may Anot sit idly by doling out enough legal
rope for defendants to participate in impending courtroom suicide; rather,
judges must take an active role in assessing the defendant=s waiver of
counsel.@ Blankenship,
673 S.W.2d at 583. A trial judge must investigate as long and as thoroughly
as the circumstances of the case before him demand. Id. The fact an
accused may tell the trial judge that she is informed of her right to counsel
does not automatically end the judge=s responsibility. Id.
To be valid, a waiver of counsel must be made with an apprehension of the
nature of the charges, the range of allowable punishments, possible defenses to
the charges and circumstances in mitigation thereof, and all other facts
essential to a broad understanding of the whole matter. Id. A trial
judge can make certain an accused=s professed waiver
of counsel is understandingly and wisely made only from a penetrating and
comprehensive examination of all the circumstances under which a waiver of
counsel is tendered. Id.  Failure
to request counsel does not amount to the voluntary relinquishment or
abandonment of a known right. Oliver, 872 S.W.2d at 715. Such a colloquy[2]
between the defendant and the judge is not part of the adversary process, but
is a preliminary matter necessary for the judge to discharge independent duties
of his office. Id. at 716. A[I]f the trial
judge is satisfied that the defendant cannot employ an attorney himself, he
must appoint counsel for that purpose unless the defendant knowingly and
voluntarily relinquishes his right to the assistance of counsel.@ Id.
Without a knowing and voluntary relinquishment or abandonment of the right to
appointed counsel, the trial judge may not conduct any adversary judicial
proceedings until the accused is represented by an attorney. Id.













Here, appellant appeared on the day of
trial without an attorney, triggering the trial court=s duty to conduct
a penetrating and comprehensive examination of all the circumstances under
which appellant=s waiver of counsel was tendered. The
trial court asked appellant if she understood she had Aa right to an
attorney.@ In addition, the trial court asked
appellant if she understood she was going up against an experienced prosecutor.[3]
However, during the entire pre-trial colloquy between the trial court and
appellant, not once did the trial court inform appellant of her right to have
counsel appointed to defend her if she was unable to hire an attorney on her
own. It was not until the sentencing hearing that, for the first time in open
court, the trial court admonished appellant that, if she could not afford to
hire an attorney, she had a right to have an attorney appointed for her to
handle any appeal. In addition, the trial court was put on notice very early in
the proceeding, prior to voir dire, that appellant was possibly indigent when
in response to a question whether she had tried to hire an attorney, appellant
responded: AWell, I really can=t afford one right
now is the honest truth.@ The trial court essentially repeated its
question and appellant answered: AI had an attorney
for my child=s case not too long ago, and that was kind
of rough. Put me in a bind. And this all of a sudden began; so I have to do it
on my own.@ These statements by Appellant clearly
show the trial court was mistaken when it informed the parties in the middle of
the trial that he had received no information on appellant=s financial status
prior to appellant=s trial testimony. The trial court, having
been put on notice of appellant=s possible
indigent status, instead of questioning appellant further regarding her
financial situation, shifted its attention to the need for appellant to elect
whether the jury or the trial court would assess punishment if appellant was
found guilty.[4]
The trial court failed in its preliminary duty to determine whether appellant
was indigent, and therefore, qualified to receive appointed trial counsel.[5]
Without knowing whether she was entitled to appointed trial counsel, appellant=s waiver of her
right to counsel was not made knowingly, intelligently, and voluntarily as
required by the Sixth and Fourteenth Amendments.

Appellant=s execution of the
ADefendant=s Waiver of
Counsel@ does not change
this result. Only after the trial court has made the determination that the
defendant has voluntarily and intelligently waived her right to counsel is the
trial court to provide the defendant with the written waiver. Tex. Code Crim. Proc. Ann. art. 1.051(g) (Vernon 2005). The State
cites the case of Blocker v. State, 889 S.W.2d 506, 508 (Tex.
App.CHouston [14th
Dist.] 1994, no pet.) in support of its argument that a written waiver of
counsel alone is sufficient to establish a knowing, intelligent, and voluntary
waiver of counsel. Blocker can be distinguished on its facts. In Blocker,
the defendant entered into a plea bargain with the State and therefore did not
contest guilt, unlike the appellant here. Id. Further, the Blocker
court held only that A[a] misdemeanor defendant who appears
without counsel to confess his guilt need not be admonished of the
disadvantages of self-representation prior to the court approving a waiver of
the right to counsel and accepting a plea of guilty or no contest.@ Id.
(emphasis added). Here, appellant pled not guilty thus triggering the trial
court=s duties under Faretta.
As the trial court failed in its duty to determine appellant=s entitlement to
appointed counsel and inform appellant of that option, any waiver of counsel
made by appellant, whether orally in open court, or in a written statement, was
not made knowingly, intelligently, and voluntarily. 








Next, we must determine the necessity of a
harm analysis. No error, other than federal constitutional errors labeled as
structural by the United States Supreme Court, i.e., those involving
fundamental constitutional systemic requirements, is categorically immune to
harmless error analysis. Manley v. State, 23 S.W.3d 172, 175
(Tex. App.CWaco 2000, pet. ref=d.) (citing Salinas
v. State, 980 S.W.2d 219, 219 (Tex. Crim. App. 1998)). The United
States Supreme Court has defined such errors as Astructural defects
in the constitution of the trial mechanism, which defy analysis by >harmless error= standards.@ Arizona v.
Fulminante, 499 U.S. 279, 309, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302
(1991). The United States Supreme Court has determined these fundamental
constitutional rights include the right to counsel, the right to an impartial
judge, the right to not have members of the defendant=s race unlawfully
excluded from a grand jury, the right to self-representation at trial, and the
right to a public trial. Id. at 309B10. In Manley,
the Waco Court of Appeals held that allowing a defendant to proceed pro se
without properly determining whether he has knowingly and intelligently waived
his right to counsel constituted error involving fundamental constitutional
systemic requirements and is categorically immune to a harmless error analysis,
i.e., constitutes fundamental error. Manley, 23 S.W.3d at 175.
The failure of a trial court to fulfill its duty to determine a defendant=s entitlement to
appointed counsel, which prevents a knowing, intelligent, and voluntary waiver
of trial counsel, constitutes fundamental error, and there is no need to perform
a harmless error analysis under Tex. R.
App. P. 44.2. We sustain appellant=s second issue.

We reverse the judgment and remand the
cause for a new trial.

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment
rendered and Opinion filed April 25, 2006.

Panel
consists of Justices Anderson, Edelman and Frost.

Publish
C Tex. R. App. P. 47.2(b).











[1]  Tex. Code
Crim. Proc. Ann. art.
1.051(h) (Vernon 2005) provides: AA defendant may withdraw a waiver of the right to
counsel at any time but is not entitled to repeat a proceeding previously held
or waived solely on the grounds of the subsequent appointment or retention of
counsel.@





[2]  AColloquy@ is
defined as a usually formal conversation or conference. The Merriam-webster Dictionary (New Edition, 2004).





[3]  Compare the
minimal examination performed in this case with that performed by the trial
court in Ganther v. State, No. 14-04-01057-CR, 2006 WL 278388, at *2B3 (Tex. App.CHouston
[14th Dist.] Feb. 7, 2006, no pet. h.). In Ganther, the trial court
performed a thorough examination of Ganther=s
decision to waive his right to trial counsel. The trial court covered Ganther=s educational background, his lack of formal legal
training, in contrast to his extensive time spent studying law books in the law
library, the fact Ganther had written many of the motions in his case, and
based on that information, felt confident he was familiar enough with the legal
process to conduct his own defense. Further, the trial court warned Ganther he
would be held to the same standard as an attorney and had to follow the rules
of evidence and procedure just as an attorney would and that he would have to
face the consequences if he made a mistake. Finally, the trial court expressly
addressed Ganther=s right to have an attorney appointed to defend him,
his understanding of that right and the trial court directly asked Ganther if
he wished to waive his right under the Sixth Amendment to have an attorney
appointed to defend him.   





[4]  If the trial
court had properly fulfilled its preliminary duty to determine appellant=s indigent status, it would have discovered at this
preliminary stage, rather than in the middle of trial, that appellant had filed
for bankruptcy, that she was not employed, and that her sole current source of
income was intermittent child support payments. These intermittent child
support payments were the apparent reason appellant had retained an attorney on
her Achild=s case@ which she mentioned to the trial court.





[5]  After
appellant had been convicted and sentenced, the trial court did conduct an
indigency hearing and found appellant was indigent and appointed appellate
counsel to handle her appeal. This hearing occurred on October 12, 2004. It is
unlikely appellant=s financial status had changed significantly in the
month since her trial.