

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00262-CR

**DENNIS GRIFFITH,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 18th District Court
### Johnson County, Texas
### Trial Court No. F44109

## MEMORANDUM OPINION

A jury found Dennis Ray Griffith guilty on three counts of aggravated sexual assault and assessed a 99-year sentence and a $10,000 fine for each count. On the State's motion, the trial court ordered the sentences to be served consecutively. In one issue, Griffith asserts that the trial court erred in allowing Griffith to represent himself at trial.

The Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution provide that a defendant in a criminal trial has the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. However, this right to counsel may be waived, and the defendant may choose to represent himself at trial. *Faretta v. California,* 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975).

Although the right to self-representation is absolute, a waiver of the right to counsel will not be "lightly inferred," and the courts will indulge every reasonable presumption against the validity of such a waiver. *George v. State,* 9 S.W.3d 234, 236 (Tex. App.—Texarkana 1999, no pet.) (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), and *Jordan v. State,* 571 S.W.2d 883, 884 (Tex. Crim. App. 1978)).

How does a court decide whether a valid waiver of counsel exists? *Faretta* requires that (1) the appellant make a "knowing and intelligent" waiver; and (2) the appellant must be made aware of the "dangers and disadvantages of self-representation." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 1.051 (Vernon Supp. 1999)); *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541. To decide whether a defendant's waiver is knowing and intelligent, the court must make an inquiry, evidenced by the record, which shows that the defendant has sufficient intelligence to demonstrate a capacity to waive his right to counsel and the ability to appreciate the practical disadvantage he will confront in representing himself. *George,* 9 S.W.3d at 237 (citing *Archie v. State,* 799 S.W.2d 340, 344 (Tex. App.—Houston [14th Dist.] 1990), *aff'd,* 816 S.W.2d 424 (Tex. Crim. App. 1991)). The court must determine not only that the defendant wishes to waive his right to counsel, but that he understands the consequences of such waiver. *Id.*

Although it is not mandatory that the warnings be given in writing, we have previously held that the record must show that the defendant understands the consequences of his waiver. *Goffney v. State,* 812 S.W.2d 351, 352 (Tex. App.—Waco 1991), *aff'd,* 843 S.W.2d 583 (Tex. Crim. App. 1992). It is not enough that the record show conclusions by the trial court that the defendant is aware of the dangers and disadvantages of self-representation.

*Manley v. State,* 23 S.W.3d 172, 173-74 (Tex. App.—Waco 2000, pet. ref'd).

Griffith filed a handwritten motion to represent himself and requested that his appointed attorney be relieved of representation of Griffith. The appointed attorney, who had been representing Griffith for fifteen months, filed a motion to withdraw based on Griffith's desire to represent himself. Griffith approved the motion to withdraw by signing it, and a hearing was held on the motion.

At the hearing, a sworn and written waiver of right to counsel executed by Griffith was filed of record. The waiver comports with article 1.051(g) of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 1.051(g) (West 2005). During the hearing, Griffith confirmed that he had freely and voluntarily signed the waiver. The trial court thoroughly questioned Griffith about his desire to represent himself and admonished him on the risks and dangers of self-representation, including that Griffith would have to question the jury panel in voir dire and question witnesses, to call witnesses on his behalf, to follow the rules of criminal procedure and rules of evidence, and that Griffith may, in asking questions, open the door to otherwise inadmissible evidence. Griffith was informed of the range of punishment for the charged offenses and that he was not eligible for probation. Also, on cross-examination by the State, Griffith said that he had no current or past history of mental illness.

In allowing Griffith to represent himself, the trial court appointed standby counsel and explained to Griffith that standby counsel would be available to advise Griffith on courtroom protocol and to answer Griffith's questions, but that Griffith would be trying the case himself.

The next day, after Griffith had met with his standby counsel, he appeared in court. The trial court again admonished Griffith on the dangers of self-representation, including that Griffith may not know how to object to evidence or to introduce evidence, that inadmissible evidence may be admitted, and that Griffith may open the door to otherwise inadmissible evidence. Standby counsel told the trial court that he had met with Griffith and had adequately advised him of the significance of the risks of

self-representation and that Griffith was aware of it.

In asserting on appeal that the trial court erred in allowing Griffith to represent himself, Griffith's complaint is that, because the case involved DNA evidence to be used against Griffith, the trial court should have inquired into Griffith's knowledge of such scientific evidence and admonished him that it was extremely dangerous to represent himself in a case with complex scientific evidence.[1]  We disagree; Griffith cites no authority for his propositions, nor are we aware of any.  The trial court thoroughly admonished Griffith.  The record in this case sufficiently shows that, before any act of self-representation, Griffith was made fully aware of the dangers and disadvantages of self-representation, that he understood the consequences of his waiver, and that his waiver was knowing and intelligent.  Griffith's sole issue is overruled, and we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed April 25, 2013
Do not publish
[CRPM]

---

[1] The State's case did not rely solely on DNA evidence.  The victim identified Griffith as the man who abducted her on a Cleburne street and, after driving about 45 minutes to a rural residence, sexually assaulted her.  Circumstantial evidence placed Griffith at the scene of the abduction, and Griffith's ex-girlfriend's description of Griffith's vehicle closely matched the victim's description.  The victim's description of the residence where the sexual assaults took place closely matched Griffith's rural residence, which was about a 45-minute drive from Cleburne.  And Griffith's ex-girlfriend, who lived with him at the time, testified that she was out of town when the abduction and sexual assaults occurred.