**Reversed and Remanded and Majority and Dissenting Opinions filed May 1, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00344-CR

**WEYLIN W. ALFORD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 1289552**

## MAJORITY OPINION

A jury convicted appellant Weylin W. Alford of possessing less than one gram of cocaine and assessed punishment at five years' imprisonment. In a single issue, appellant argues that the trial court deprived him of the right to self-representation. We agree. Appellant's conviction is reversed, and we remand for a new trial.

### BACKGROUND

Appellant was arrested for public intoxication after causing a disturbance at a McDonald's restaurant. An officer searched appellant and found a small bag of cocaine in his pocket.

The trial court appointed counsel to represent appellant. On the day before trial, appellant filed a pro se motion to dismiss his attorney, asking the court to appoint new counsel. On the first day of trial, before the venire was brought into the courtroom, appellant told the court he had a question. The following colloquy ensued:

THE COURT: What's your question?

THE DEFENDANT: I want to represent myself in the trial, sir.

THE COURT: Why would you want to do that?

THE DEFENDANT: I have no confidence and no trust in this lawyer that I was appointed. I put in the motion to file for dismissal of this court-appointed lawyer.

THE COURT: I deny that motion.

THE DEFENDANT: Can I have a copy of it, sir, please?

THE COURT: No, sir. You filed it. So, it's in the Court's file. It's going to be ruled on and dismissed. So, Mr. Ruzzo is going to represent you. Now, when you say you want to represent yourself, did you go to any law school?

THE DEFENDANT: No, sir, not quite but, I mean, you know —

THE COURT: What's not quite?

THE DEFENDANT: We are entitled to, you know, time in the law library.

THE COURT: My question is, did you go to law school?

THE DEFENDANT: I said, no, sir.

THE COURT: Have you studied any law at all?

THE DEFENDANT: I mean, in the law library.

THE COURT: Talking about an educational process such as college?

THE DEFENDANT: No, sir.

THE COURT: Law school?

THE DEFENDANT: No, sir.

2

THE COURT: All right. How old are you?

THE DEFENDANT: Thirty, sir.

THE COURT: How far did you go in school?

THE DEFENDANT: Eleventh grade. I have two points before I get my GED though.

THE COURT: Never graduated from high school?

THE DEFENDANT: No, sir.

THE COURT: Haven't been to college?

THE DEFENDANT: No, sir.

THE COURT: Tell me about what you know about the legal system.

THE DEFENDANT: As far as what?

THE COURT: Tell me what you know, how the legal system works.

THE DEFENDANT: With a person that doesn't have any finance, as far as, you know, my situation, I believe the most important part, it depends on representation of the person that's in trial, you know, and because I don't have the financial status, I don't feel like, you know, the person that is appointed to represent the person that's convicted of the crime or that's pending of the crime can get really a fair chance if he's not, you know, represented hisself [sic] or he had a paid lawyer or something like that. That's pretty much what I've determined.

THE COURT: How many trials have you had?

THE DEFENDANT: I was almost to go to trial in '07 for the theft of a person.

THE COURT: How many trials have you had, none?

THE DEFENDANT: None, sir.

THE COURT: In every other case you've pled guilty?

THE DEFENDANT: Technically on that case right there in '07, I didn't do it. I just copped out because I had nine months. They had sent me in here

3

nine and a half months on something I didn't do. I was prepared to go to trial, but I had nine months under my belt. They came with an offer of eight, I believe. That's why I never been to state jail, sir.

THE COURT: The nine convictions you had, you've never had a jury trial?

THE DEFENDANT: No, sir.

THE COURT: The reason you want one now is because Mr. Ruzzo is not representing you properly?

THE DEFENDANT: I didn't say that, sir. I feel confident more with the jury trial, sir.

THE COURT: So, your knowledge of the judicial system basically is what? How the trial works. Tell me how a trial works.

THE DEFENDANT: I'm pretty much just going to prove my innocence.

THE COURT: You can't do that with Mr. Ruzzo as your lawyer?

THE DEFENDANT: I don't have no confidence in him, sir.

THE COURT: Why not?

THE DEFENDANT: It's like Mr. Ruzzo or any other person, none of that applies. I don't have any confidence in him for what he's presenting in front of me in the past.

THE COURT: Why not?

THE DEFENDANT: It's a lot of different reasons, you know. In part A of my dismissal motion for the court-appointed, I explain a few areas.

THE COURT: I don't understand what the confidence is that you're lacking in Mr. Ruzzo.

THE DEFENDANT: It's a numerous amount of things, Your Honor. I mean, I've asked him to do, you know, a few things as far as, you know, the value of my rights in my case.

THE COURT: The value of your rights?

THE DEFENDANT: Yeah.

4

THE COURT: You were here the other day, Mr. Alford, and I heard probable cause as to how you came to be arrested and it's basically you were arrested for public intoxication and the officer found drugs on you.

THE DEFENDANT: Your Honor —

THE COURT: Just listen to me. Go with me here.

THE DEFENDANT: Yes, sir.

THE COURT: The jury's going to hear those facts. If you want to get on the witness stand and dispute all that, you can more than do that. You understand that? You're going to be allowed to testify, if you want to. But what is it you expect from a lawyer? I don't care how good the lawyer is to do anything against those facts?

THE DEFENDANT: Well, number one, I was just speaking to Mr. Ruzzo.

THE COURT: Do you not hear my question? What is it you expect the best lawyer in the world, whoever that person may be, to do in that fact situation where all there is is you're arrested for public intoxication? Drugs are found on you, and they're found to be cocaine.

THE DEFENDANT: Your Honor, if you allow me a chance to explain.

THE COURT: What is it you expect a lawyer to do in that case?

THE DEFENDANT: Can I explain, please? First of all, it has a lot more to do with me asking the best lawyer in the world. In my opinion, it has more so to do with, you know, me and the lawyer right here, we've been disputing this case and supposed to have been talking about the facts of the case for the past few months.

THE COURT: What are the facts, other than what I've said?

THE DEFENDANT: What do the State have against me?

THE COURT: Is there something you know that nobody else does?

THE DEFENDANT: I didn't have no coke that day.

THE COURT: Okay. So, the officer's going to come in here and lie about it?

5

THE DEFENDANT: I don't know — as far as him, I don't know what he's going to do. I don't know him as a person.

THE COURT: Do you not dispute — are you disputing the facts?

THE DEFENDANT: Yes, sir.

THE COURT: The officer's going to come in here, say he arrested you and found drugs on you?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Then the jury will decide if that's true or not.

THE DEFENDANT: This is what I'm saying as far as my lawyer. My lawyer — I've asked him before we came in here about, you know, the private investigator. He showed me a motion for that. In the past I've been — took the trial for a private investigator and they've come all the way down to Harris County to talk to me.

THE COURT: Again, explain to me —

THE DEFENDANT: I'm trying to, sir.

THE COURT: — if you will, what is it that you think you are going to be able to do to dispute the facts of this case or Mr. Ruzzo is going to do, other than — he can only cross-examine.

THE DEFENDANT: He hasn't showed me no motions.

THE COURT: Motions for what?

THE DEFENDANT: He just not showing me motions right now today. You know, I've asked him numerous amount of times for copies of the motions that he's filed.

THE COURT: Mr. Alford, do you have any sense at all?

THE DEFENDANT: I wouldn't be human if I didn't, Your Honor.

THE COURT: Okay. Then let's just step back. In the position you're in, let's just say you wandered in off the street into this courtroom and you were sitting here listening to the discussion I'm having with somebody else and the facts are going to be — is that a police officer arrested an individual at a bus stop; is that what it was?

6

THE STATE: It was at a McDonald's.

THE COURT: At a McDonald's. Arrested that individual for public intoxication. And in the course of arresting that individual, he searched that individual and found cocaine on him. Now, if you use your common sense, do you think there's a whole lot of dispute about those facts?

THE DEFENDANT: If proven innocent, yes.

THE COURT: How?

THE DEFENDANT: You know, he said he filed a motion for a private investigator. Why haven't the private investigator spoke with me?

THE COURT: I'm asking you to look at the facts objectively, as somebody who has no interest in the case.

THE DEFENDANT: I mean, it's pretty much his word against mine, sir, if that's what you're asking.

THE COURT: That's what a trial's about. If you want to testify, no, he didn't, then you're allowed to, but why are you arguing over the facts of this case?

THE DEFENDANT: He's not showing me no paperwork to support what he's saying.

THE COURT: What is it Mr. Ruzzo is supposed to be doing other than he's going to ask questions of the witness —

THE DEFENDANT: He's not.

THE COURT: — when the State's done. And he can call you as a witness and then you could testify as to what you want to say. That's how the trial will transpire. That's how it will take place.

THE DEFENDANT: Your Honor, it's been four months I've been in here. I'm not, you know, trying to point no fingers at Mr. Ruzzo.

THE COURT: Why do you keep saying he's not doing anything for?

THE DEFENDANT: Me being aware, you know, I'm saying me being aware that he's doing something by him telling me he's doing something and then showing me some paperwork, it's two different stories to me.

7

THE COURT: Again, Mr. Alford, step back. No, I'm — just think about it. What is it — if you were just somebody sitting here listening to this discussion, what do you think a lawyer should be doing for that individual?

THE DEFENDANT: If I asked him — if you're my lawyer and I ask you for the paperwork that you filed for my innocence of the case, I would — if I was your lawyer, I would present it to you, Your Honor, sir.

THE COURT: So, the motion for discovery is filed. He hasn't showed you a copy of it?

THE DEFENDANT: He hasn't gave me a copy. He's just now showing me this.

THE COURT: Okay.

THE DEFENDANT: It's been times he told me he hasn't filed any motions at all.

THE COURT: The motion for discovery of exculpatory evidence?

THE DEFENDANT: I've got mixed emotions here. That's all I'm saying.

THE COURT: Motion in limine.

THE DEFENDANT: I've got mixed emotions. I'm just now seeing some of this today.

THE COURT: Well, let's go back to my original question. Tell me what you know about the criminal justice system.

THE DEFENDANT: I've told you —

THE COURT: Education in which you're able to represent yourself?

THE DEFENDANT: I've told you, sir, I feel like it got more to do with the representation of a person.

THE COURT: I'm going to deny your request to represent yourself. Anything further before the jury?

Appellant later asked the trial court if he would be able to cross-examine witnesses, and the trial court informed him that only his lawyer would be allowed to conduct cross-examination. Appellant was represented by counsel throughout the remainder of the trial.

8

ANALYSIS

Appellant contends that the trial court erred by denying his request for self-representation. The State concedes that appellant unequivocally invoked his right to self-representation but argues that his subsequent comments about having "mixed emotions" could have reasonably indicated to the trial court that appellant abandoned his desire to represent himself.

## I.       Standard of Review

We review the denial of a defendant's request for self-representation for an abuse of discretion. *See Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010) (whether the defendant was competent to proceed pro se).[1] We view the evidence in the light most favorable to the trial court's ruling, and we will imply any findings of fact supported by the record and necessary to affirm the trial court's ruling when, as here, the trial court did not make explicit findings. *Id.*

## II.      The Right to Self-Representation

The Sixth and Fourteenth Amendments to the United States Constitution protect a defendant's right to self-representation in a criminal proceeding. *Moore v. State*, 999 S.W.2d 385, 396 (Tex. Crim. App. 1999) (citing *Faretta v. California*, 422 U.S. 806, 818–20) (1975)).[2] Once a defendant unequivocally asserts the right to self-representation, the trial court must admonish the defendant about the dangers and disadvantages of waiving the right to counsel and proceeding pro se. *Blankenship v.*

---

[1] *See also Douglas v. State*, No. 14-00-01226-CR, 2002 WL 1988163, at *8 (Tex. App.—Houston [14th Dist.] Aug. 29, 2002, pet. ref'd) (not designated for publication) (citing *DeGroot v. State*, 24 S.W.3d 456, 457–60 (Tex. App.—Corpus Christi 2000, no pet.)) ("The standard of review is abuse of discretion for a factual determination such as whether a defendant has elected to represent himself.").

[2] The Texas Constitution "is more explicit than the Sixth Amendment," providing that "the accused shall 'have the right of being heard by himself or counsel, or both.'" *Kombudo v. State*, 148 S.W.3d 547, 553 (Tex. App.—Houston [14th Dist.] 2004) (quoting Tex. Const. art. I, § 10), *vacated*, 171 S.W.3d 888 (Tex. Crim. App. 2005), *appeal perm. abated*, No. 14-03-00738-CR, 2006 WL 54413 (Tex. App.—Houston [14th Dist.] Jan. 12, 2006, no pet.) (mem. op., not designated for publication).

*State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984) (citing *Faretta*, 422 U.S. at 835–36).[3]  It is "the trial court's duty to give the necessary explanations and warnings before ruling on his request."  *Birdwell v. State*, 10 S.W.3d 74, 78 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).  When a trial court denies a defendant's "eleventh hour" request for new counsel, and "the accused unequivocally assert[s] his right to self-representation under *Faretta*, persisting in that assertion after proper admonishment, the court must allow the accused to represent himself."  *Burgess v. State*, 816 S.W.2d 424, 428–29 (Tex. Crim. App. 1991).

After making an unequivocal request for self-representation, however, a defendant may make a "conscious, deliberate and voluntary choice to waive [this] known right."  *Funderburg v. State*, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986).  Waiver of the right to self-representation is "not subject to the same stringent standards as the waiver of the right to counsel."  *Id.*  Thus, a defendant waives the right to self-representation "'if it reasonably appears to the court that [the] defendant has abandoned his initial request to represent himself.'"  *Id.* (quoting *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982)).  "Of course, a defendant has not waived his right to self-representation if he has merely acquiesced to a trial court's unmistakable denial of his request to represent himself."  *Id.*

## III. Denial of Appellant's Right to Self-Representation

The State acknowledges that appellant unequivocally invoked his right to self-representation.  The State does not contend that this invocation was untimely, conditional, or undertaken for dilatory purposes, or that self-representation would have

---

[3] For example, the trial court "must inform the defendant 'that there are technical rules of evidence and procedure, and he will not be granted any special consideration solely because he asserted his pro se rights.'"  *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008) (quoting *Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988)); *see also* Tex. Code Crim. Proc. Ann. art. 1.051(g) (Vernon Supp. 2011) ("If a defendant wishes to waive the right to counsel for purposes of entering a guilty plea or proceeding to trial, the court shall advise the defendant of the nature of the charges against the defendant and, if the defendant is proceeding to trial, the dangers and disadvantages of self-representation.").

been disruptive. *See Ex parte Winton*, 837 S.W.2d 134, 135–36 (Tex. Crim. App. 1992). Instead, the State contends only that appellant relinquished the right to represent himself by "vacillating on the issue." We must determine whether the record supports an implied finding that appellant relinquished his right to self-representation after an unequivocal assertion of that right — that is, whether the trial court abused its discretion by determining that appellant abandoned his initial request to represent himself. We conclude this finding is not supported by the record. Thus, the trial court abused its discretion when it denied appellant's request for self-representation.

Courts have held that a defendant waives his or her previously invoked right to self-representation if the record shows that the defendant made a subsequent request for trial counsel's assistance. In that situation, it is reasonable to infer abandonment. *See, e.g.*, *Brown*, 665 F.2d at 609–10 (the defendant said he wanted his counsel to "stay on" as his lawyer, and counsel informed the court that the defendant "had changed his mind and wanted counsel to continue his representation"); *Funderberg*, 717 S.W.2d at 642 (the defendant "informed the trial court that he had consulted with his appointed attorney and had decided to accept his assistance"); *Carroll v. State*, 176 S.W.3d 249, 255 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (the defendant made a subsequent request under oath for the appointment of counsel); *Garrett v. State*, 998 S.W.2d 307, 316–17 (Tex. App.—Texarkana 1999, pet. struck) (the defendant "stated that he was satisfied with his counsel and wanted to be represented by him and that he no longer wanted to represent himself"); *Brooks v. State*, No. 07-05-00162-CR, 2006 WL 957795, at *2 (Tex. App.—Amarillo Apr. 13, 2006, pet. ref'd) (mem. op., not designated for publication) (the defendant "asked that his appointed counsel be allowed to represent him for the remainder of the trial"); *Tillman v. State*, No. 01-04-0027-CR, 2005 WL 22304, at *2 (Tex. App.—Houston [1st Dist.] Jan. 6, 2005, pet. ref'd) (mem. op., not designated for publication) (after receiving proper admonishments, the defendant requested that the trial court appoint him different counsel); *Douglas v. State*, No. 14-00-01226-CR, 2002 WL 1988163, at *9 (Tex. App.—Houston [14th Dist.] Aug. 29, 2002, pet. ref'd) (not

designated for publication) (the defendant "steadfastly refused to waive his right to counsel, saying over and over that he wanted 'a lawyer to consult with'"); *Benjamin v. State*, No. 06-98-00044-CR, 1999 WL 363534, at *2 (Tex. App.—Texarkana June 8, 1999, pet. ref'd) (mem. op., not designated for publication) (the defendant "affirmatively withdrew the motion" for self-representation by stating, "I'm withdrawing it").[4]

No such circumstances are present here. After unequivocally invoking his right to self-representation, appellant never requested trial counsel's assistance. The State asserts that abandonment occurred based on appellant's statements, "I've got mixed emotions here. That's all I'm saying," and, "I've got mixed emotions. I'm just now seeing some of this today." Appellant told the trial court that he was concerned about counsel not filing motions on his behalf or showing him the paperwork. It appears from the record that appellant made the "mixed emotions" statements while he reviewed motions that counsel filed on his behalf.[5] Appellant's statements were not made in response to any direct questioning by the trial court.

Even if we credit the State's assumption that the reference to "mixed emotions" meant appellant was having "mixed emotions" ***about self-representation***, this record cannot support a finding of abandonment. There is no indication that appellant "made a conscious, deliberate and voluntary choice to waive a known right." *Funderburg*, 717 S.W.2d at 642. We must consider the "total dialogue" between appellant and the trial court so as not to "grossly distort the meaning and importance of what was said."

[4] *See also DeGroot v. State*, 24 S.W.3d 456, 460–61 (Tex. App.—Corpus Christi 2000, no pet.) (no error to deny self-representation when the defendant said that "what he really wanted is the opportunity to collaborate with a defense attorney"); *Martin v. State*, No. 02-04-00344-CR, 2006 WL 20405, at *3, *5, *7 (Tex. App.—Fort Worth Jan 5, 2006, pet. ref'd) (mem. op, not designated for publication) (no error to deny self-representation when the defendant vacillated on the issue and told the court, among other things, "I had really rather have a lawyer," and "Yes, I need an attorney"); *Richards v. State*, No. 01-88-00835-CR, 1990 WL 11976, at *1–2 (Tex. App.—Houston [1st Dist.] Feb. 15, 1990, pet. ref'd) (not designated for publication) (no error to deny self-representation when the defendant refused to sign a written waiver of counsel; the court asked, "[A]re you saying that you don't want any lawyer," and the defendant responded, "I want another lawyer").

[5] The clerk's record indicates that two motions were filed on the same day appellant requested self-representation.

*Blankenship*, 673 S.W.2d at 584 (court of appeals erred by finding that the defendant's request for self-representation was conditional on his access to law books when "[t]he appellant *never* told the trial court he had to have the 'books' in order to represent himself"). After appellant requested self-representation, he never told the trial court that he wanted assistance from counsel at trial.[6]

The State cites *Anderson v. State*, No. 14-06-00348-CR, 2007 WL 1470275 (Tex. App.—Houston [14th Dist.] May 22, 2007, pet. ref'd) (mem. op., not designated for publication), in support of its argument that denial of appellant's request for self-representation is not an abuse of discretion. As in appellant's case, the trial court in *Anderson* attempted to address the defendant's stated concerns with counsel. *See id.* at *3. After telling Anderson that the court could make arrangements to have several witnesses contacted, the court asked, "What else?" *Id.* at *4. Anderson responded, "That's all I have at this time." *Id.* The trial court never ruled on appellant's request for self-representation. *Id.* Anderson did not reassert his request for self-representation, and he proceeded to trial with the assistance of counsel. *See id.* at *2, *4. This court held that Anderson abandoned his request for self-representation. *Id.* at *5.

In *Anderson*, abandonment occurred after the defendant (1) received admonishments about the dangers of self-representation;[7] (2) declined to reassert his request for self-representation in response to follow-up questioning by the trial court; and (3) proceeded to trial with appointed counsel without receiving a ruling on his request for

---

[6] *Cf. Dunn v. State*, 819 S.W.2d 510, 522 (Tex. Crim. App. 1991) (citing *Scarbrough v. State*, 777 S.W.2d 83 (Tex. Crim. App. 1989)) (no error to allow self-representation because the defendant's "[m]omentary vacillation should not be equated with a conscious equivocation"); *Scarbrough*, 777 S.W.2d at 93 (defendant did not waive his right to self-representation by accepting standby counsel, which was "necessarily inconsistent with assertion of the right to self representation;" the trial court should "inform the accused he must choose instead between two mutually exclusive rights — the right to self representation or to representation by counsel — [and] the accused must be . . . given the opportunity, thus informed, to reassert his right to self representation").

[7] The trial court told Anderson that it was "never a good idea" for a defendant to represent himself because "it never turns out well;" Anderson would waive the right to effective representation; he could not complain about anything he did at trial; and he would be held to the same standards as an experienced criminal practitioner. *See Anderson*, 2007 WL 1470275, at *3.

self-representation. In view of these circumstances, Anderson did not "merely acquiesce" to an "unmistakable denial" of his request for self-representation.

Unlike Anderson, appellant was not admonished about the dangers and disadvantages of self-representation. *See, e.g.*, *Faretta*, 422 U.S. at 835. The trial court asked appellant about his formal education and knowledge of the legal system — inquiries that are permissible but not necessarily required to ascertain whether a defendant can knowingly exercise the right to self-representation. *See Martin v. State*, 630 S.W.2d 952, 954 (Tex. Crim. App. 1982) (op. on reh'g). The trial court did not tell appellant he would be held to the same standards as an attorney, that he would be required to comply with rules of procedure and evidence, or that self-representation is generally disadvantageous; instead, the court engaged appellant in a dialogue about the strength of the State's evidence and suggested that not even the best lawyer in the world could help him.[8] Immediately before denying appellant's request for self-representation, the court returned to its "original question" about appellant's education and knowledge of the criminal justice system.

We also note that, unlike *Anderson*, the trial court here expressly denied appellant's request for self-representation. The court's express denial of appellant's request to represent himself and the absence of a subsequent request by appellant for trial counsel indicate that appellant did not abandon his right to self-representation.

These circumstances parallel *Blankenship*, 673 S.W.2d at 580–82. In *Blankenship*, the defendant made an unequivocal request for self-representation: "I would like to pro se my own case." *Id.* at 580. The trial court inquired about the defendant's

---

[8] The trial court said: (1) "But what is it you expect from a lawyer? I don't care how good the lawyer is to do anything against those facts;" (2) "What is it you expect the best lawyer in the world, whoever that person may be, to do in that fact situation where all there is is you're arrested for public intoxication? Drugs are found on you, and they're found to be cocaine. . . . What is it you expect a lawyer to do in that case;" (3) "Now, if you use your common sense, do you think there's a whole lot of dispute about those facts? . . . [W]hy are you arguing over the facts of this case;" and (4) "Mr. Alford, do you have any sense at all?"

14

formal education and knowledge of the legal system. *See id.* at 580–82. Concluding that the defendant was unqualified to represent himself, the trial court made an express ruling: "I overrule you [at] this time. You will be represented by [counsel] in this case. That is all." *Id.* at 582. The Court of Criminal Appeals reversed, holding that the right to self-representation may not be denied merely because a defendant is unqualified to represent himself or lacks sufficient legal skills. *Id.* at 584.

We conclude that appellant's conduct of proceeding to trial with appointed counsel was "mere acquiescence" to the trial court's express ruling denying his request for self-representation, rather than a waiver of his right to self-representation. The record does not support an implied finding that appellant abandoned his initial request for self-representation.

Accordingly, the trial court abused its discretion by denying appellant's right to self-representation. This error is not subject to harm analysis. *Birdwell*, 10 S.W.3d at 78; *see also Miles v. State*, 204 S.W.3d 822, 826 (Tex. Crim. App. 2006). We sustain appellant's sole issue.

## CONCLUSION

Having sustained appellant's sole issue on appeal, we reverse the trial court's judgment and remand for a new trial.


/s/      William J. Boyce
        Justice


Panel consists of Justices Seymore and Boyce and Senior Justice Mirabal.[*] (Mirabal, J., dissenting.)

Publish — Tex. R. App. P. 47.2(b).

---

[*] Senior Justice Margaret Garner Mirabal sitting by assignment.

15