**Teresa LATHEM, Appellant**

**v.**

**The STATE of Texas State**

**NO. 02–15–00228–CR**

Court of Appeals of Texas,
Fort Worth.

DELIVERED: January 12, 2017

James Christopher Abel, Erica Wheeler, Abel Law Firm, PLLC, Flower Mound, TX, for Appellant.

Paul Johnson, Criminal District Attorney; Catherine Luft, Chief of the Appellate Section; Matthew J. Whitten, Paul Hiemke, Rick Daniel, Assistant Criminal District Attorneys for Denton County, Denton, TX, for State.

PANEL: LIVINGSTON, C.J.; WALKER, J.; and KERRY FITZGERALD (Senior Justice, Retired, Sitting by Assignment)

## OPINION

### KERRY FITZGERALD, JUSTICE

A jury convicted Appellant Teresa Lathem of six counts of criminal solicitation of capital murder and assessed her punishment at fifty years' confinement on each count. The trial court sentenced her accordingly.[1] This case centers around the issue of self-representation. We reverse.

## I. BACKGROUND

Appellant was indigent and in custody pending trial. The trial court appointed counsel to represent her on August 2, 2013. The indictment was returned on September 20, 2013. Appellant wrote a letter complaining about her lawyer and requesting new counsel on March 29, 2014, and again on May 28, 2014. The trial court

granted the request and appointed a new lawyer on June 20, 2014. The jury trial was set for April 6, 2015.

On that day, before jury selection began, a pretrial hearing was held, apparently the first such hearing.[2] The trial court identified several motions before the court. Appellant immediately requested new counsel and told the court that she had not "even seen this man [her current appointed trial counsel] except in the past two weeks [before the hearing]." She complained that she had not discussed the motion for election as to punishment with counsel, a fact disputed by counsel. The trial court accepted as true counsel's statement.

The trial court addressed the application for community supervision, and Appellant stated that it had been filed without her knowledge or consent. It does not bear her signature.[3] When the trial court explained that an application had to be on file for the jury to consider community supervision, Appellant assented. Appellant responded to the trial court's questions about making decisions on the punishment election and application for community supervision by stating that she had not had adequate counsel with whom to discuss these matters. The trial court asked Appellant if she swore that she had not been convicted of a felony in Texas or any other state; she responded that she had not been.

Appellant told the trial court that she had directed her lawyer to file a motion to have himself removed as counsel and to present the motion to the trial court two

---

1. The trial court ordered that each sentence would run concurrently. *See* Tex. Code Crim. Proc. Ann. art. 42.08 (West Supp. 2016).

2. The docket sheet in the appellate record does not reflect that any other pretrial hearings had occurred.

3. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 4(e) (West Supp. 2016) (requiring motion to be sworn).

months earlier. After further discussions,[4] defense counsel referred to the State's prior plea offer of thirty-five years, stating, "I assume my client rejected it through the other attorney." Appellant responded that she had never heard of it "until [current defense counsel had] said something of it the other day." Defense counsel asked Appellant on the record if she rejected the offer. Appellant said she did. After defense counsel corrected various cause numbers on defense pleadings and the prosecutor corrected misspellings on the indictment without objection, the trial court inquired if there was anything else, and defense counsel responded, "That's it."

The pivotal exchange between Appellant and the trial court followed:

THE DEFENDANT: I need a new attorney.

THE COURT: That request is denied.

THE DEFENDANT: Okay. *Then I need to have him removed as counsel, and I'll name myself as counsel.*

THE COURT: *That request is denied.* [Emphasis added.]

The record reflects that after a recess was taken, the following proceedings took place:

(Open court, defendant present, no jury panel)

THE COURT: We'll go back on the record. We're about to bring in the jury panel so that we can begin voir dire.

Anything, before we bring in the jury panel, from the state?

PROSECUTOR: Nothing from the state, Judge.

THE COURT: Anything from the defendant?

DEFENSE COUNSEL: No, your Honor.

THE COURT: At this time please bring in the jury panel.

DEFENDANT: Really? Really? That's what you're saying, that this—

THE COURT: Ma'am, we're about to bring in the jury panel. So you need to stand up and respect the jury panel.

DEFENDANT: Kangaroo court. Corrupt judge and corrupt attorney.

(Open court, defendant and jury panel present)

COURT: You may be seated.

Thereafter, the trial court commenced voir dire, administered the oath to the panel, and addressed the panel about various phases of the applicable law. Counsel for the State and counsel for Appellant likewise addressed the panel. After the parties exercised their respective strikes, defense counsel entered a plea of not guilty on behalf of Appellant, and court adjourned. The following day, April 7, 2015, a hearing was held concerning Appellant's absence from court. Thereafter, the State began presenting evidence.

## II. ISSUE

In her first issue, Appellant contends that the trial court erred in denying her request for self-representation.

The State responds that: (1) the request was not clear and unequivocal, as the "record does not reveal that Appellant made any overtures to the trial court about being dissatisfied with her second court-appointed lawyer until the day of trial" and as Appellant really only wanted a different lawyer; (2) the request was untimely, as the request likely would have delayed the orderly procedure of the courts or interfered with the fair administration of jus-

4. Among other matters, Appellant stated that when she was brought to jail, she was suffering from a severe neck injury and was having trouble talking.

tice; and (3) Appellant waived her right to self-representation by her later conduct.

## III. STANDARD OF REVIEW

We review the denial of a defendant's request for self-representation for an abuse of discretion.[5] We view the evidence in the light most favorable to the trial court's ruling, and we imply any findings of fact supported by the record and necessary to affirm the ruling when the trial court did not make explicit findings.[6]

The denial of the right to self-representation constitutes a structural error that is not subject to harmless-error review and instead requires automatic reversal.[7]

## IV. ANALYSIS

### A. SELF–REPRESENTATION

■ It is well established that every criminal defendant has the constitutional right to the assistance of counsel, although not counsel of his own choice,[8] and the constitutional right to represent himself.[9]

■ In *Faretta*, the Court held that a defendant has a constitutional right to proceed without counsel when he voluntarily, knowingly, and intelligently chooses to do so, and the state may not constitutionally force a lawyer upon him.[10] While a defendant has a fundamental right to represent himself, representation by counsel is the standard, not the exception, and there is a strong presumption against the waiver of the right to counsel.[11] The Sixth Amendment embodies two competing rights because exercising the right to self-representation necessarily means waiving the right to counsel.[12] Thus, while a criminal defendant's right to counsel stays in effect until waived, a defendant's right to self-representation is not triggered until it is asserted.[13]

■ In order for a defendant to represent himself, his request must be clear

---

5. *Alford v. State*, 367 S.W.3d 855, 861 (Tex. App.–Houston [14th Dist.] 2012, pet. ref'd).

6. *Id.*

7. *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8, 104 S.Ct. 944, 950 n.8, 79 L.Ed.2d 122 (1984) ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless."); *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) ("[T]he denial of the right to self-representation constitutes a structural error that is not subject to harmless error review and instead requires automatic reversal."); *see also United States v. Davila*, —— U.S. ——, 133 S.Ct. 2139, 2149, 186 L.Ed.2d 139 (2013) (listing the "denial of self-representation" as a structural error); *United States v. Gonzalez–Lopez*, 548 U.S. 140, 148–49, 126 S.Ct. 2557, 2564, 165 L.Ed.2d 409 (2006) (listing "the denial of the right of self-representation" as a "structural defect").

8. *Hill v. State*, 666 S.W.2d 663, 667 (Tex. App.–Houston [1st Dist.] 1984), *aff'd*, 686 S.W.2d 184 (Tex. Crim. App. 1985).

9. U.S. Const. amends. VI, XIV; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.05 (West 2005) (providing accused "shall have the right of being heard by himself, or counsel, or both"); *Faretta v. California*, 422 U.S. 806, 818–20, 95 S.Ct. 2525, 2532–33, 45 L.Ed.2d 562 (1975); *Hatten v. State*, 71 S.W.3d 332, 333 (Tex. Crim. App. 2002).

10. 422 U.S. at 820–21, 835, 95 S.Ct. at 2533–34, 2541.

11. *Martinez v. Ct. of App. of Cal.*, 528 U.S. 152, 161, 120 S.Ct. 684, 691, 145 L.Ed.2d 597 (2000).

12. *Buhl v. Cooksey*, 233 F.3d 783, 789 (3d Cir. 2000); *Chapman v. United States*, 553 F.2d 886, 892 (5th Cir. 1977).

13. *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541; *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).

and unequivocal; he must assert it timely, namely, before the jury is impaneled;[14] and he must voluntarily, knowingly, and intelligently waive counsel.[15] Further, the request must be unconditional and must not be a calculated attempt to disrupt, subvert, obstruct, or delay the orderly procedure of the courts or to interfere with the fair administration of justice.[16] While the exercise of the right of self-representation may cause some inconvenience or even disruption at trial, as long as it is not a calculated obstruction,[17] the delay cannot deprive the accused of the right once properly asserted.[18]

■ Once a defendant asserts his right of self-representation, to ensure that this decision is constitutionally effective, a trial court is obligated to advise the accused of the dangers and disadvantages of self-representation. The Court in *Faretta* emphasized that "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation."[19]

14. *Blankenship v. State*, 673 S.W.2d 578, 585 (Tex. Crim. App. 1984).

15. *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir. 1982) (op. on reh'g en banc). The United States Court of Appeals for the Second Circuit addressed the purpose of this requirement:

> The purpose of requiring that a criminal defendant make an "unequivocal" request to waive counsel is twofold. First, unless the request is unambiguous and unequivocal, a convicted defendant could have a colorable Sixth Amendment appeal regardless of how the trial judge rules: if his request is denied, he will assert the denial of his right to self-representation; if it is granted, he will assert the denial of his right to counsel. Second, the requirement of an unambiguous and unequivocal request inhibits any "deliberate plot to manipulate the court by alternatively requesting, then waiving counsel."

*Williams v. Bartlett*, 44 F.3d 95, 100–01 (2d Cir. 1994)(citations omitted).

16. *Funderburg v. State*, 717 S.W.2d 637, 641–42 (Tex. Crim. App. 1986); *Blankenship*, 673 S.W.2d at 585; *Thomas v. State*, 550 S.W.2d 64, 68 (Tex. Crim. App. 1977).

17. The State never asserted and we do not conclude that Appellant engaged in calculated obstructionist or obstreperous behavior so egregious as to warrant the denial of her constitutional right to self-representation, during the pretrial hearing when she answered the questions put to her or when she made a single, spontaneous statement in response to the remarks of the trial court and counsel immediately before the panel was brought into the courtroom for voir dire. *See People v. Hall*, 49 A.D.3d 1180, 856 N.Y.S.2d 360, 361 (2008); *People v. Conney*, 98 A.D.2d 604, 469 N.Y.S.2d 337, 338–39 (1983). *Lewis v. State*, No. 14-14-00779-CR, —— S.W.3d ——, —— – ——, 2016 WL 93760, at *2–6 (Tex. App.–Houston [14th Dist.] 2016, pet. ref'd), is distinguishable. Defendant Lewis believed himself to be a sovereign citizen beyond the reach of any criminal court, made rude, disrespectful and bizarre statements in court, constantly interrupted court proceedings, and on one occasion refused to leave his cell for no expressed reason until he was forcibly removed and taken to court. *See also People v. McIntyre*, 36 N.Y.2d 10, 364 N.Y.S.2d 837, 324 N.E.2d 322, 328 (1974) ("[T]he Court may not validate an erroneous denial of a Pro se motion on the basis of a postruling outburst.").

18. *Scarbrough v. State*, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989); *Birdwell v. State*, 10 S.W.3d 74, 77 (Tex. App.–Houston [14th Dist.] 1999, pet. ref'd). We are aware that requests for self-representation are generally made under circumstances in which a defendant is dissatisfied with the services of counsel, invariably court-appointed counsel. Thus, it is not surprising that these exchanges initially involve complaints about the performance of appointed counsel and efforts by a defendant to have appointed counsel removed and another lawyer appointed by the court. In some cases, the defendant also requests self-representation, and the request itself causes some delay and inconvenience.

19. *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541; *see also Godinez v. Moran*, 509 U.S. 389, 400–

 It is not necessary for the trial court to recite a formulaic litany of questions or to follow a particular "script" to assure itself that an accused who has asserted her right to self-representation has done so with "eyes open."[20] *Faretta* dictates

> that if (1) a defendant clearly and unequivocally declares to a trial judge that he wants to represent himself and does not want counsel, (2) the record affirmatively shows that a defendant is literate, competent, and understanding and that he is voluntarily exercising his informed free will, and (3) the trial judge warns the defendant that he thinks it is "a mistake not to accept the assistance of counsel" and that the defendant will "be required to follow all the 'ground rules' of trial procedure," the right of self-representation cannot be denied.[21]

 Once a defendant unequivocally asserts the right to self-representation, it is "the trial court's duty to give the necessary explanations and warnings before ruling on his request."[22] Sound authority dictates that if "a trial court denies a defendant's 'eleventh hour' request for new counsel, and 'the [defendant] unequivocally assert(s) his right to self-representation under *Faretta*, persisting in that assertion after proper admonishment, the court must allow the accused to represent himself.' "[23]

It is this right of self-representation, entitling Appellant to present her own defense, which is at issue in this case.

## B. CLEAR AND UNEQUIVOCAL ASSERTION OF RIGHT TO SELF-REPRESENTATION

In her first issue, Appellant contends that she clearly and unequivocally asserted her request to represent herself and that the trial court improperly denied her request without a hearing.

Appellant relies upon *Birdwell*[24] and *Winton*.[25] In *Birdwell*, prior to the venire being brought into the courtroom for jury selection, defense counsel advised the trial court that the defendant "ha[d] a motion he want[ed] to make ... for the record," but the trial court responded that the defendant had no standing.[26] Defense counsel then stated that the defendant would like to represent himself. The trial court responded that it was not going to delay the trial any longer and that court-appointed counsel would continue to represent the defendant.[27] The *Birdwell* court noted that while the trial court based its denial of the defendant's right of self-representation on a concern regarding delay, Birdwell asserted on appeal that the record did not affirmatively reveal that the request was made to achieve delay or tactical advantage or that it would have resulted in delay, especially because he did not demand the appointment of different counsel

01, 113 S.Ct. 2680, 2687–88, 125 L.Ed.2d 321 (1993); *Ex parte Winton*, 837 S.W.2d 134, 135 (Tex. Crim. App. 1992); *Blankenship*, 673 S.W.2d at 583.

20. *Dolph v. State*, 440 S.W.3d 898, 902 (Tex. App.–Texarkana 2013, pet. ref'd) (quoting *Burgess v. State*, 816 S.W.2d 424, 428 (Tex. Crim. App. 1991)).

21. *Id.* (quoting *Faretta*, 422 U.S. at 835–36, 95 S.Ct. at 2541).

22. *Alford*, 367 S.W.3d at 861–62 (quoting *Birdwell*, 10 S.W.3d at 78).

23. *Id.* at 862 (quoting *Burgess*, 816 S.W.2d at 428–29).

24. 10 S.W.3d at 76–78.

25. 837 S.W.2d at 135–36.

26. 10 S.W.3d at 76.

27. *Id.*

but merely requested to proceed on his own behalf.[28]

The *Birdwell* court stated that while the exercise of the right of self-representation may cause some inconvenience or even disruption in the trial proceedings, so long as it is not a calculated obstruction, such a delay cannot deprive the defendant of the right once properly asserted.[29] The court was aware of no case in which denial of the right of self-representation was based on an assumed delay merely from proceeding pro se and emphasized that if the court were to follow the State's reasoning, it could effectively insulate denials of self-representation from meaningful appellate review.[30] Thus, the denial of the defendant's right to self-representation was not justified and was not subject to harmless error analysis.[31]

Similarly, the *Winton* court stated that because the trial judge found no evidence that the defendant's assertion of his constitutional right to self-representation was untimely or conditional or that it would have been disruptive or dilatory, there was no justification for the denial of that right.[32]

The State contends that Appellant's request was "an off-the-cuff protest at being forced to proceed without getting to choose who her lawyer would be, and not truly born from a desire to represent herself," particularly as she made her request at the same time that she asked for a new lawyer. The State further argues that her request was made only in the context of wanting a different lawyer and, therefore, did not amount to a clear and unequivocal invocation of the right of self-representation.

The State relies on *Richards v. State*,[33] *DeGroot v. State*,[34] and *Teehee v. State*.[35] In *Richards*, the trial court replaced the first court-appointed lawyer with a second lawyer. At trial, the defendant stated that his lawyer was not representing him adequately and he wished to represent himself. The trial court questioned the defendant about his age, education, work history, and legal experience and advised him about the disadvantages of self-representation. When the trial court asked the defendant if he wanted court-appointed counsel to represent him or whether defendant wanted to represent himself without an attorney, the defendant replied that he wanted to represent himself

28. *Id.* at 76–77.

29. *Id.* at 77.

30. *Id.* at 77–78.

31. *Id.* at 78.

32. 837 S.W.2d at 136; *see also Scarbrough*, 777 S.W.2d at 94 n.3 (providing courts should "hesitate to deny an asserted right to self representation solely on the basis of *predictions* of likely recalcitrant behavior ... [and] find[ing] no support in the record to justify concluding [defendant's] assertion of his right to self representation was calculated to obstruct, or 'would likely result in a farce and mockery of justice and the judicial process' "); *Johnson v. State*, 676 S.W.2d 416,

420 (Tex. Crim. App. 1984) (reversing denial of defendant's right to self-representation, noting nothing in the record "would reflect that had the trial judge honored [Johnson]'s demand for self-representation" when it was made, it would have so disrupted "the proceedings as to have affected the administration of justice").

33. No. 01–88–00835–CR, 1990 WL 11976 (Tex. App.–Houston [1st Dist.] Feb. 15, 1990, pet. ref'd) (not designated for publication).

34. 24 S.W.3d 456 (Tex. App.–Corpus Christi 2000, no pet.).

35. No. 02–14–00137–CR, 2015 WL 1868868 (Tex. App.–Fort Worth Apr. 23, 2015, no pet.) (mem. op., not designated for publication).

"along with another attorney."[36] The defendant refused to sign a written waiver of counsel. After a recess, the trial court questioned the defendant again about whether he did not want any lawyer or whether he just did not want the second lawyer who had been appointed. The defendant replied, "I want another lawyer."[37] The trial court concluded that this was not a complete unconditional waiver of counsel and stated that the court-appointed lawyer would remain as counsel.[38]

The *Richards* court emphasized that a defendant's right of self-representation may be waived by conduct indicating that the defendant is vacillating or has abandoned his request.[39] The test as to whether the defendant has waived his right to self-representation after once asserting it is whether it reasonably appears from the defendant's words or conduct that he has abandoned his initial request.[40] The *Richards* court concluded that the trial court could reasonably have found that the defendant simply wanted the court to replace his attorney and to appoint another to succeed him.[41] Thus, the *Richards* court held that the trial court did not abuse its discretion by concluding that the defendant did not clearly and unequivocally invoke his right of self-representation.[42]

In *DeGroot*, after a trial before the court, a Canadian graduate student was convicted of assault and sentenced to twelve months in jail, but the trial court suspended imposition of the sentence and placed the defendant on community supervision for eighteen months. On the day of trial, the defendant expressed dissatisfaction with court-appointed counsel and requested another attorney. This occurred after the passage of a year to prepare for trial, numerous court appearances, and an appearance two days before trial at which the defendant and counsel announced ready for trial. The trial court informed the defendant that he could proceed with his appointed attorney or he could represent himself.[43] The appellate court identified one statement of the defendant ("I think I'll proceed without an attorney") which appeared in the middle of the trial court's admonition and upon which the entire appeal was premised, considered the statement in the context of the entire exchange between the trial court and the defendant, and concluded that the defendant did not clearly and unequivocally assert his right to defend himself pro se.[44]

Throughout the exchange in *DeGroot*, the trial court repeatedly asked if the defendant wanted to proceed on his own without counsel or with appointed counsel. The defendant's responses included the following requests: (1) another attorney or a public defender; (2) more time to prepare a case; (3) an opportunity to prepare with a lawyer; (4) proceeding without an attorney; and (5) more time to collaborate with a defense attorney.[45] The defendant's last statement was: "I haven't had the opportunity to collaborate with a defense attorney. And that's what I would like. Now, whether it's court-appointed or

---

36. *Richards*, 1990 WL 11976, at *1.

37. *Id.*

38. *Id.*

39. *Id.* at *2.

40. *Funderburg*, 717 S.W.2d at 642.

41. 1990 WL 11976, at *2.

42. *Id.*

43. *DeGroot*, 24 S.W.3d at 457.

44. *Id.* at 458–61.

45. *Id.* at 458–59.

whether I hire one, that's what I need."[46] Shortly thereafter, the trial court concluded the hearing by stating,

All right. Mr. DeGroot, you have not expressed a desire for you to represent yourself; you've actually said you would rather have a lawyer. I'm going to leave Mr. Lerma as your attorney. I find that he has been representing you for a year. That is sufficient time for you to have complained.[47]

After setting forth in detail the entire exchange between the trial court and the defendant, the appellate court stated:

The trial judge's finding that the appellant was not attempting to assert his right to self representation is well substantiated in this section of the reporter's record. DeGroot clearly and unequivocally sought a different attorney, but not to represent himself. When first asked if he wished to proceed alone he twice attempted to be appointed different counsel. His statement about proceeding alone is not consistent with his other statements. He later retracts that statement, stating that what he really wanted is the opportunity to collaborate with a defense attorney.[48]

The appellate court also concluded that the defendant's request was untimely and made for purposes of delay.[49] It, thus, held that the trial judge's decision that the defendant was not seeking to represent himself was not an abuse of discretion as he did not clearly and unequivocally assert his right to represent himself.[50]

In *Teehee*, the defendant, after rejecting a plea bargain and waiving a jury trial, entered an open plea of guilty before the court. The trial court found the defendant guilty, and the defendant requested a presentence investigation report. The next day, the trial court heard testimony concerning punishment. Several weeks later, after the trial court reconvened, the following exchange occurred:

[TEEHEE]: I would like to withdraw my plea.

THE COURT: That's denied.

Have a seat.

[TEEHEE]: I would like to withdraw counsel. I don't want counsel. I don't want this counsel.

THE COURT: He is going to sit with you during this hearing. All right. If you want to do the questioning, you can do the questioning, but that's up to you. You don't have that education.

How far did you go in school?

[TEEHEE]: I made it through the 9th grade in school.

THE COURT: You have had no legal training; is that correct?

[TEEHEE]: I don't have any legal training. I think I prefer to go pro se, myself.

THE COURT: I don't feel that you're qualified. I think you would be making a mistake. (Defense counsel) will sit with you. Okay?

[TEEHEE]: Alls I can do is make the request.[51]

When the trial court was ready to hear testimony, it prefaced the proceeding by stating,

THE COURT: And I think it would be better, Mr. Teehee—don't you think it would be better for (defense counsel)

46. *Id.* at 459 (emphasis removed).

47. *Id.*

48. *Id.* at 460.

49. *Id.*

50. *Id.* at 460–61.

51. 2015 WL 1868868, at *1.

to ask your mother questions because he's talked with her?

[TEEHEE]: Well, I don't—I don't understand how it would really matter at this point. Like I said, I already requested to withdraw the plea and I requested substitute counsel so I don't know what else really to do.[52]

The defendant's request in *Teehee* was untimely and, thus, the court held that the trial court did not err by denying it.[53] Nonetheless, the court addressed whether the defendant's request met the "clear and unequivocal" test.[54] Relying upon *Richards*, the court held that considering the trial court's hearing in its entirety, the defendant's vacillating statements did not show a clear and unequivocal desire to waive the right to counsel but could have just as easily been a complaint about current counsel and a request for additional substitute counsel.[55]

■ The State's authorities reflect that the trial court admonished the defendant in some depth and that the defendant either chose representation by a lawyer or did not assert a clear and unequivocal request for self-representation. Unlike these authorities, in the instant case, the trial court gave no admonishments. After Appellant asserted her desire to represent herself, the trial court summarily denied her request. The State's authorities are, therefore, inapposite.

■ The State challenges the genuineness and import of Appellant's request by characterizing it as an "off-the-cuff," de minimis protest.[56] We do not have the benefit of an admonishment exchange like those present in the records of *Richards*, *DeGroot*, and *Teehee*. If the trial court here had properly admonished Appellant, as required by *Faretta*, the record may have shed more light upon her request. However, the record before us does show that the trial court did not ask Appellant if she really only wanted another lawyer or was requesting a continuance, and it further shows that the trial court did not probe for evidence of any dilatory intent. Thus, the record shows no evidence that Appellant's request for self-representation was an "off-the-cuff" de minimis protest, as asserted by the State, designed as a dilatory tactic to delay the start of trial or to gain a tactical advantage.

On this record, we conclude that the plain, ordinary, and generally accepted meaning of Appellant's statement—"I'll name myself as counsel"—shows that she wanted to act as her own lawyer and refutes the State's argument. Appellant did not vacillate about whether she really wanted another lawyer, a substitute lawyer, standby counsel, or a lawyer with whom she would share the work. We are not persuaded by the State's contention that arguably recasts Appellant's statement in a form intended to dilute its essen-

52. *Id.*

53. *Id.* at *2.

54. *Id.*

55. *Id.*

56. The matter of whether a defendant must be allowed to represent himself at trial requires answers to two principal questions: whether the defendant is competent to represent himself at trial, *see Indiana v. Edwards*, 554 U.S.

164, 170, 177–78, 128 S.Ct. 2379, [2387–88], 171 L.Ed.2d 345 (2008), . . . and whether the request to proceed *pro se* is genuine, *see, e.g., Faretta*, 422 U.S. at 817, 95 S.Ct. [at 2532] (it is the defendant's "basic right to defend himself if he *truly* wants to do so" (emphasis added)).

*U.S. v. Barnes*, 693 F.3d 261, 270 (2d Cir. 2012), *cert. denied*, — U.S. —, 133 S.Ct. 917, 184 L.Ed.2d 704 (2013).

tial meaning.[57]

■ There are no magic words ("no talismanic formula"[58]) that need be recited to invoke this right. Whether a defendant states that she wants to act as her own lawyer or to be her own legal counsel or she names herself as her own legal counsel, as Appellant did in this case, such statements clearly and unequivocally apprise the trial court that she wants to represent herself at trial. Moreover, it is apparent that the trial court understood Appellant's statements to be a request for affirmative relief because the trial court summarily denied the request. Appellant may not be faulted or penalized for asserting a legitimate constitutional right available to her, the right to self-representation, under the guise that her request was only a protest, without any support in the record for that conclusion.

The trial court was, therefore, bound to determine that Appellant voluntarily, knowingly, and intelligently waived counsel, that she was made aware of the dangers and disadvantages of self-representation, and that she knew what she was doing when she requested to represent herself. It was incumbent upon the trial court to ensure that if Appellant persisted in her request, she would be afforded her constitutional right of self-representation.

## C. TIMELINESS

■ Appellant contends that she asserted her request to represent herself timely and not for purposes of delay. The State responds that her request was untimely, and only by footnote does the State assert that while Appellant's request was made prior to jury selection, the fact that it was made only immediately before jury selection in all likelihood would have delayed the orderly procedure of the courts or interfered with the orderly administration of justice.[59]

The State emphasizes that the "record does not reveal that Appellant made any overtures to the trial court about being dissatisfied with her second court-appointed lawyer until the day of trial." This representation is not accurate. The record reflects Appellant's undisputed testimony that she instructed her second court-appointed lawyer to file a motion to have himself removed as counsel and to present the motion to the trial court two months earlier.

■ The State also asserts that Appellant's request would have delayed or interfered with the progress of the trial. This assertion is not supported by the record. Appellant did not ask for a continuance or take any other action suggesting interference with the progress of the trial. As stated in *Alford*, "[a] trial court may not deny the right to self-representation based simply on 'predictions of likely recalcitrant behavior' or delay or disruption incidental to self-representation without a legal education."[60]

■ The State ignores well-settled law that a request for self-representation is timely if brought before the jury is

---

57. A similar argument was made and rejected in *Hacker v. Herbert*, 825 F.Supp. 1143, 1148–50 (N.D.N.Y. 1993).

58. *Graham v. Connor*, 490 U.S. 386, 398 n.11, 109 S.Ct. 1865, 1873 n.11, 104 L.Ed.2d 443 (1989).

59. A party's principal arguments should be in the body of the brief.

60. *Alford v. State*, No. 01–15–00226–CR, 2016 WL 4485351, at *3 (Tex. App.–Houston [1st Dist.] Aug. 25, 2016, pet. filed) (mem. op., not designated for publication) (quoting *Scarbrough*, 777 S.W.2d at 92 n.3).

impaneled.[61] A jury has been impaneled when those who have been chosen to serve have been selected and sworn.[62] Thus, Appellant's request, made before jury selection even began, was timely.[63]

## D. WAIVER

The State contends that Appellant waived her request for self-representation by her later conduct for several reasons. First, she never renewed her request to represent herself. Second, she acquiesced to her lawyer's representation by participating and cooperating with her trial counsel in defending the case, including directing him to ask certain questions and consulting with him. Third, Appellant "refused to even attend" the first day of evidence in her trial.

As to the State's first reason, that Appellant never renewed her request to represent herself, essentially a procedural default argument, it is well established that the denial of a timely, clear, and unequivocal request for self-representation is sufficient to preserve the issue of self-representation.[64] According to authori-

ty cited by the State itself, once Appellant made her request and the trial court ruled, the issue was adequately preserved for appellate review.[65] If trained legal counsel are not required to repeatedly renew a motion that has been categorically denied, no purpose is served by requiring more of an untrained defendant seeking self-representation.

The pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial.[66] The record reveals that Appellant was not accorded any of these rights.[67] Thus, once jury selection commenced, the error in denying the right of self-representation had occurred with the court's denial of Appellant's request. Even if the trial court changed its ruling later in the trial and granted the request, partial relief in the form of permitting self-representation would not have cured this constitutional violation.[68] The State's argu-

61. *McDuff v. State*, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997); *Blankenship*, 673 S.W.2d at 585; *Birdwell*, 10 S.W.3d at 77.

62. *Hill v. State*, 827 S.W.2d 860, 864 (Tex. Crim. App.), *cert. denied*, 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992); *Rodriguez v. State*, No. 02–07–00332–CR, 2008 WL 5057028, at *2 (Tex. App.–Fort Worth Nov. 26, 2008, pet. ref'd) (mem. op., not designated for publication); *Price v. State*, 782 S.W.2d 266, 269 (Tex. App.–Beaumont 1989, pet. ref'd).

63. *See Chapman*, 553 F.2d at 894 (holding demand to represent oneself is timely if made before jury is impaneled and sworn absent evidence that it was delay tactic and indicating that it would even be timely after jury selection began); *U.S. v. Price*, 474 F.2d 1223, 1226, 1227 (9th Cir. 1973) (holding moving to proceed pro se after jury was impaneled but before it was sworn was timely as a matter of law).

64. *Birdwell*, 10 S.W.3d at 77.

65. *Funderburg*, 717 S.W.2d at 642 n.6 ("[A] defendant need not object to the trial court's denial of his right to represent himself. A defendant's clear and unequivocal request for self-representation, followed by an unmistakable denial of that right, is sufficient to preserve alleged error.").

66. *McKaskle*, 465 U.S. at 174, 104 S.Ct. at 949.

67. *See Faretta*, 422 U.S. at 836, 95 S.Ct. at 2541; *Goffney v. State*, 843 S.W.2d 583, 584–85 (Tex. Crim. App. 1992); *Manley v. State*, 23 S.W.3d 172, 175 (Tex. App.–Waco 2000, pet. ref'd).

68. We also observe that if a defendant is permitted to represent himself but the appropriate admonishments as to the dangers and disadvantages of self-representation are not

ment essentially requires the performance of useless acts in the form of fruitless motions.[69] We conclude that the State's first reason is without merit.

As to its second reason supporting its waiver argument, that Appellant acquiesced to her lawyer's representation by participating and cooperating with him in defending the case, including directing him to ask certain questions and consulting with him, the State refers us to a single exchange reflecting cross-examination of Appellant:

Q. While you've been in the courtroom today, you've been loudly talking to your attorney about questions he needs to ask. Is that fair to say?

A. I've been what? I'm sorry.

Q. Loudly talking to your attorney about questions that he needs to ask. Have you been doing that?

A. Been talking to him?

Q. Yeah.

A. Yeah, I've been trying to talk to him.

 We first must examine the nature of a waiver and question whether waiver even applies in this case. A waiver is ordinarily "an intentional relinquishment or abandonment of a known right or privilege"[70] and must be the product of a free and meaningful choice.[71] Thus, waivers of constitutional rights must be voluntary, intelligent, and knowing acts done with sufficient awareness of the relevant circumstances and likely consequences.[72] As a general proposition, a defendant can waive the right of self-representation after asserting it.[73] The trial court may find a waiver of the right where it reasonably appears that the defendant has abandoned the initial request or vacillated on the issue, situations normally present at pretrial hearings.[74]

 As applicable to this case, Appellant made a clear and unequivocal request to represent herself. This request triggered her constitutional right of self-representation because, unlike the right to

given until after jury selection, they are too late and the error is not subject to a harmless error analysis. *Manley*, 23 S.W.3d at 175.

69. See *Bartlett*, 44 F.3d at 100–02; *Funderburg*, 717 S.W.2d at 642; *Anderson v. State*, No. 14–06–00348–CR, 2007 WL 1470275, at *4 (Tex. App.–Houston [14th Dist.] May 22, 2007, pet. ref'd) (mem. op., not designated for publication) (stating mere acquiescence to a trial court's unmistakable denial of his request to represent himself is not a waiver of a defendant's right to self-representation); *Wiggins v. State*, 298 Ga. 366, 782 S.E.2d 31, 35 (2016).

70. *Stringer v. State*, 241 S.W.3d 52, 56 (Tex. Crim. App. 2007) (quoting *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 1247, 16 L.Ed.2d 314 (1966)). One court focused on two key words—"known right"—in the phrase "known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

71. *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541.

72. *Davison v. State*, 405 S.W.3d 682, 686 (Tex. Crim. App. 2013).

73. *Brown*, 665 F.2d at 611 (citing *Chapman*, 553 F.2d at 893 & n.12).

74. *Id.*; *Winton*, 837 S.W.2d at 135; *Robinson v. State*, 387 S.W.3d 815, 820–21 (Tex. App.–Eastland 2012, no pet.); *see also Faretta*, 422 U.S. at 835–36, 95 S.Ct. at 2541; *Wilson v. Walker*, 204 F.3d 33, 38 (2d Cir.) (holding that petitioner abandoned initial request when he subsequently had two different lawyers appointed and did not assert right again after question of self-representation had been left open for further discussion), *cert. denied*, 531 U.S. 892, 121 S.Ct. 218, 148 L.Ed.2d 155 (2000); *Raulerson v. Wainwright*, 732 F.2d 803, 809 (11th Cir.) (holding defendant waived self-representation right by proceeding with assigned counsel and walking out of *Faretta* hearing), *cert. denied*, 469 U.S. 966, 105 S.Ct. 366, 83 L.Ed.2d 302 (1984); *Scarbrough*, 777 S.W.2d at 92; *Thomas*, 550 S.W.2d at 68; *Parker v. State*, 545 S.W.2d 151, 156 (Tex. Crim. App. 1977).

counsel, it must first be asserted before it can attach. But the term "attach" is a term of art and must not be confused with the term "possess." A defendant must voluntarily, knowingly, and intelligently waive his right to counsel, and it is incumbent upon the trial court to advise the defendant of the dangers and disadvantages of self-representation. If the defendant persists in his request after receiving appropriate admonishments, the trial court must grant his request, at which time the defendant actually possesses the constitutional right to represent himself. Thereafter, a defendant may abandon or forfeit this right by his misconduct. However, if the trial court *denies* the defendant's request to represent himself, the defendant is never granted the right and, thus, never possesses the right. The State fails to explain how Appellant could waive her right to self-representation through acquiescence when she never possessed it.[75] Under the waiver doctrine, the State must clearly establish that Appellant knew she possessed the right to self-representation at the time of the waiver and that she intentionally relinquished or abandoned this right.[76] The record shows the opposite.

The authorities relied upon by the State, *Funderburg*,[77] *Brown*,[78] and *Anderson*,[79] are distinguishable. Those cases and the instant case involve requests for self-representation which arose pretrial. In *Funderburg* and *Brown*, the defendants changed their minds and decided to continue with appointed counsel.[80] In *Anderson*, the court held that the defendant requested self-representation, was warned of the dangers and disadvantages, never pursued the matter or obtained a ruling, and for all intents, abandoned his request.[81] Each

**75.** In *Moore v. Haviland*, 531 F.3d 393 (6th Cir. 2008), *cert. denied*, 558 U.S. 933, 130 S.Ct. 92, 175 L.Ed.2d 234 (2009), the court held that a defendant cannot waive the right to self-representation if that right never attached. *Id.* at 403–04. As the District Court of Delaware put it when discussing *Moore*,

> The Sixth Circuit opined that it would be an unreasonable application of *Faretta* to hold that the petitioner could waive his right to self-representation through acquiescence because, given the absence of any *Faretta* inquiry, the right to proceed *pro se* had never attached. Simply stated, "a party allegedly waiving his right to self-representation" must "actually *kn(o)w* that he was in possession of that right at the time of the purported waiver."

*Brathwaite v. Phelps*, No. Civ. A. 06–472–GMS, 2009 WL 3345595, at *18 n.23 (D. Del. Oct. 16, 2009), *aff'd*, 418 Fed.Appx. 142 (3d Cir. 2011), *cert. denied*, 564 U.S. 1026, 131 S.Ct. 3038, 180 L.Ed.2d 858 (2011).

The *Moore* court stated in part,

Moore did take the stand and respond to questions from his attorney after his requests to proceed pro se. But by contrast with *McKaskle*, no presumption of acquiescence attaches to that representation by counsel, because Moore was never permitted to proceed pro se. Without having ruled on Moore's two requests for self-representation, the trial judge told Moore's attorney to call the next witness and Moore was called to testify. It would be wholly unreasonable to require Moore, in order to preserve his requests to proceed pro se, to refuse the trial court's orders to continue with the trial, especially in light of the court's having previously admonished him for disrupting the trial. Moore's responsiveness to questions posed by his attorney was neither a withdrawal of his previous requests to proceed pro se or a waiver of his right to self-representation.

531 F.3d at 403–04(distinguishing *McKaskle*, 465 U.S. at 182–83, 104 S.Ct. at 953).

**76.** *Stringer, supra*, at 56.

**77.** 717 S.W.2d at 641–642.

**78.** 665 F.2d at 610–11.

**79.** 2007 WL 1470275, at *2–5.

**80.** *Brown*, 665 F.2d at 610; *Funderburg*, 717 S.W.2d at 640–41.

**81.** 2007 WL 1470275, at *4–5. *Anderson*, supra, was similarly distinguished in *Alford*, 367 S.W.3d at 864.

case involves either a deferred ruling or no ruling and a defendant who either did not pursue the request for self-representation or who had a change of heart and accepted appointed counsel.[82] Each case presents a clear waiver. In the instant case, on the other hand, Appellant requested self-representation, and the request was denied. This case did not involve any deferred ruling of the trial court or statement by Appellant or counsel that she wanted current counsel to continue representing her. In this case, the trial court immediately denied Appellant's request and did not give the *Faretta* warnings, and Appellant did not waive her right to counsel. This case is similar to *Alford,* wherein the court held the defendant's conduct in proceeding to trial with appointed counsel was "mere acquiescence" to the trial court's express ruling denying his request for self-representation, rather than a waiver of his right to self-representation.[83] Further, while Appellant's testimony shows that she tried to talk to her lawyer, the State does not identify any portion of the record reflecting that she had changed her mind about representing herself and had agreed to representation by court-appointed counsel. Appellant never expressly withdrew her request to represent herself. The record shows that the trial court appointed counsel to provide legal representation, refused to dismiss him, and, in effect, directed Appellant to confer with counsel. The quoted exchange shows only that Appellant tried to comply with the trial court's order.

The same argument advanced by the State was presented in *United States v. Lorick.*[84] There the court held that because at the outset of the defendant's trial the trial court had unmistakably indicated its intention not to recognize the claimed right from that point on, the defendant's subsequent apparent acquiescence could only in fairness be interpreted as a concession of his inability successfully to act on the right asserted.[85]

**82.** Courts have held that a defendant waives his or her previously invoked right to self-representation if the record shows that the defendant made a subsequent request for trial counsel's assistance. In that situation, it is reasonable to infer abandonment. *See, e.g., Brooks v. State,* No. 07–05–00162–CR, 2006 WL 957795, at *2 (Tex. App.–Amarillo Apr. 13, 2006, pet. ref'd) (mem. op., not designated for publication) (finding waiver when the defendant "asked that his appointed counsel be allowed to represent him for the remainder of the trial"); *Tillman v. State,* No. 01–04–00027–CR, 2005 WL 22304, at *2 (Tex. App.–Houston [1st Dist.] Jan. 6, 2005, pet. ref'd) (mem. op., not designated for publication) (finding waiver when, after receiving proper admonishments, the defendant requested that the trial court appoint him different counsel); *Carroll v. State,* 176 S.W.3d 249, 255 (Tex. App.–Houston [1st Dist.] 2004, pet. ref'd) (finding waiver when the defendant made a subsequent request under oath for the appointment of counsel); *Douglas v. State,* No. 14–00–01226–CR, 2002 WL 1988163, at *9 (Tex. App.–Houston [14th Dist.] Aug. 29, 2002, pet. ref'd) (not designated for publica-

tion) (finding waiver when the defendant "steadfastly refused to waive his right to counsel, saying over and over that he wanted 'a lawyer to consult with' "); *Garrett v. State,* 998 S.W.2d 307, 316–17 (Tex. App.–Texarkana 1999, pet. ref'd) (finding waiver when the defendant "stated that he was satisfied with his counsel and wanted to be represented by him and that he no longer wanted to represent himself"); *Benjamin v. State,* No. 06–98–00044–CR, 1999 WL 363534, at *2 (Tex. App.–Texarkana June 8, 1999, pet. ref'd) (not designated for publication) (finding waiver when the defendant "affirmatively withdrew the motion" for self-representation by stating, "I'm withdrawing it").

**83.** 367 S.W.3d at 865.

**84.** 753 F.2d 1295, 1299 (4th Cir.), *cert. denied,* 471 U.S. 1107, 105 S.Ct. 2342, 85 L.Ed.2d 857 (1985).

**85.** *Id.; See also Bartlett,* 44 F.3d at 100–02; *Funderburg,* 717 S.W.2d at 642; *Anderson,* 2007 WL 1470275, at *4; *Wiggins,* 782 S.E.2d at 35; *Benjamin,* 1999 WL 363534, at *2;

If the State's position were the law, Appellant would have had two untenable choices at trial: she could have remained mute and refused to cooperate or consult with counsel, thereby preserving her right to self-representation, or she could have cooperated and consulted with trial counsel, thereby waiving her right to self-representation. We conclude that this so-called "choice" between two alternative courses of action is "constitutionally offensive" and plainly involuntary.[86]

We reject the State's argument that a defendant's exercise of the constitutional right of self-representation is nullified if a defendant communicates with court-appointed counsel erroneously forced upon her. The State's position would immunize from review an erroneous judicial denial of a request for self-representation in all cases in which a defendant cooperated with counsel whom she had previously sought to remove.[87] It would also violate the dictates of *Faretta* by improperly elevating one

Moore, 531 F.3d at 403–04 (holding no presumption of acquiescence because defendant was never allowed to proceed pro se).

**86.** *Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir. 1976) ("A criminal defendant may be asked, in the interest of orderly procedures, to choose between waiver and another course of action as long as the choice presented to him is not constitutionally offensive."); *see Smith v. Grams*, 565 F.3d 1037, 1045–46 (7th Cir. 2009) (holding waiver of right to counsel not voluntary and knowing when defendant terminated counsel and requested another attorney, but the trial court would allow delay and appointment only upon waiver of speedy trial right); *Pazden v. Maurer*, 424 F.3d 303, 319 (3d Cir. 2005) (holding waiver of counsel involuntary and stating that "choice between incompetent or unprepared counsel and appearing pro se is a dilemma of constitutional magnitude," and resulting choice to proceed pro se "cannot be voluntary in the constitutional sense when such a dilemma exists") (citations omitted); *United States v. Silkwood*, 893 F.2d 245, 248–49 (10th Cir. 1989) (holding waiver of right to counsel at sentencing not voluntary when trial court tried to dissuade discharge of counsel defendant believed incompetent; "[f]or the waiver to be voluntary, the trial court must inquire into the reasons for the defendant's dissatisfaction with his counsel to ensure that the defendant is not exercising a choice between incompetent or unprepared counsel and appearing pro se"), *cert. denied*, 496 U.S. 908, 110 S.Ct. 2593, 110 L.Ed.2d 274 (1990); *Beverly v. State*, 349 Md. 106, 707 A.2d 91, 97–98 (1998) (holding defendant whose plea of guilty was improperly denied by trial court did not waive issue on appeal after conviction because he was faced with coercive choice). In sum, a

"clear choice between two alternative courses of action does not always permit a [defendant] to make a voluntary decision. If a choice presented ... is constitutionally offensive, then the choice cannot be voluntary." *Wilks v. Israel*, 627 F.2d 32, 36 (7th Cir. 1980), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 874, 66 L.Ed.2d 811 (1981).

As stated in *Wilks*, every waiver need not "be entirely unconstrained." *Id.* at 35. "A criminal defendant may be asked, in the interest of orderly procedures, to choose between waiver and another course of action as long as the choice presented to him is *not constitutionally offensive.*" *Maynard*, 545 F.2d at 278. In *Wilks*, the trial court presented the defendant with a clear choice between representation by court-appointed counsel or self-representation with court-appointed counsel available for consultation at the defendant's discretion; but the trial court clearly indicated that it would not appoint new counsel. *Wilks*, 627 F.2d at 35. The defendant persisted in his desire to discharge court-appointed counsel and have new court-appointed counsel. *Id.* at 35–36. The appellate court found knowing and intelligent waiver of his right to counsel and also found that his choice was voluntary. *Id.* A clear choice between two alternative courses of action, however, does not always permit a defendant to make a voluntary decision. The *Wilks* court emphasized that "[i]f a choice presented to a [defendant] is constitutionally offensive, then the choice cannot be voluntary." *Id.* at 36.

**87.** *Cf. Birdwell*, 10 S.W.3d at 78 (noting that assuming delay based on a defendant's proceeding pro se "could effectively insulate denials of self-representation from meaningful appellate review").

constitutional provision (representation by counsel) over another constitutional provision (self-representation).[88]

We conclude that it would be fundamentally unfair to punish Appellant for doing what the trial court ordered her to do—accept the legal services of and consult with court-appointed counsel.[89] The State's second reason is without merit.

The State's third reason must be placed in context in order to properly examine it. The State, summarizing its reasons for waiver, interjects an additional reason to support its waiver argument:

> "[A]ppellant did not merely acquiesce to her attorney's representation but, *following the first day of trial in which she refused to even attend*, participated with him in defending the case . . . ."

The record shows that prior to the introduction of evidence on the second day of trial, the trial court noted Appellant's absence and held a brief hearing outside the presence of the jury. Two witnesses, a paramedic and a deputy, testified, and Court's Exhibit One, a DVD containing an audio-video recording taken April 7, 2015, in the jail and related to Appellant's absence from the courtroom, was admitted for record purposes only. The State inexplicably fails to recite a single fact testified to by a witness or to refer to any specific portion of the recording. Instead, the State briefly alludes to Appellant's absence by asserting that "she refused to even at-

tend." It seems that the calculated thrust of the State's argument is that Appellant voluntarily elected not to attend court without any justification whatever. In other words, the State is apparently arguing that Appellant abandoned or forfeited her right to self-representation.

We are not unmindful that the State's token reference to this event is completely unsubstantiated by fact, law, or legal analysis. However, because of the sensitive nature of the issue involved and notwithstanding the State's failure to develop its argument, in the interest of justice, we will examine whether, as before, the State's invocation of the waiver doctrine even applies in this situation and whether the State's abridged characterization of Appellant's behavior is supported by the evidence.

In our discussion of the State's second reason related to Appellant's "acquiescence," we noted that under the waiver doctrine, the State must clearly establish that Appellant knew she possessed the right to self-representation at the time of the waiver and that she intentionally relinquished or abandoned this right. We also noted that the State failed to explain how Appellant could waive a right (self-representation) which she did not possess, the right having been expressly denied.

It is undisputed that prior to jury selection, the trial court deprived Appellant of her constitutional right to self-representation and that when she was absent from

---

88. *See Faretta*, 422 U.S. at 820, 95 S.Ct. at 2533–34.

89. *See In re Arnett*, 804 F.2d 1200, 1203 (11th Cir. 1986) (holding a waiver of a substantial constitutional right must be a voluntary, knowing, and intelligent act); *Spencer v. Ault*, 941 F.Supp. 832, 852 (N.D. Iowa 1996) (concluding defendant did not waive his previously invoked right to self-representation by cooperating with defense counsel appointed over his objection); *see also Orazio v. Dugger*,

876 F.2d 1508, 1512–13 (11th Cir. 1989) (same). It is generally accepted that a defendant "need not make fruitless motions" to "renew his request to represent himself . . . or forego cooperation with defense counsel" in order to avoid waiver of a previously asserted right to self-representation when the trial court clearly denied that request. *Brown*, 665 F.2d at 612; *see also Buhl*, 233 F.3d at 806; *United States v. Arlt*, 41 F.3d 516, 523 (9th Cir. 1994); *Raulerson*, 732 F.2d at 809.

the courtroom, she no longer possessed the right. A proper implementation of the waiver doctrine precludes its application in discussing the State's third reason in support of waiver in this case.

■■■ In reality, the constitutional issue of self-representation was presented and denied, however erroneously, and was considered disposed of by the parties and the trial court. The only real issue before the trial court on the second day of trial was whether the trial could proceed in Appellant's absence, an Article 33.03 issue.[90] This is clear from the trial court's message, relayed to Appellant by the deputy, that if Appellant did not appear in the courtroom, the trial would continue without her. Under the particular facts of this case, Appellant's absence was not and is not a legitimate basis for determining the State's waiver claim.[91]

We thus conclude that the State's third reason offered to support the trial court's denial of her right to self-representation—that she waived the right—is without merit.

## V. CONCLUSION

We sustain Appellant's first issue. Because our resolution of her first issue is dispositive of the appeal, we do not reach her remaining two issues.[92]

We conclude that the trial court abused its discretion in denying Appellant's request for self-representation. The trial court was, therefore, bound to admonish her of the dangers and disadvantages of self-representation in order to determine that her request was made knowingly, intelligently, and voluntarily. It was incumbent upon the trial court to ensure that if Appellant persisted in her request, she would be afforded her constitutional right of self-representation.

■■■ We also conclude that the State's argument that the overwhelming evidence rendered the error harmless lacks any merit.[93] The judgment of the trial court is reversed, and the case is remanded for further proceedings.

---

**90.** *See* Tex. Code Crim. Proc. Ann. art. 33.03 (West 2006). Appellant's counsel did not raise this issue on appeal.

**91.** It is proper for a trial court to terminate the right of self-representation accorded a defendant when a defendant thereafter engages in serious and obstructionist misconduct, such as by bringing weapons into the courtroom. *Alford,* 2016 WL 4485351, at *5. It is well established that a trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. *See Illinois v. Allen,* 397

U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). However, in the case at bar, the right of self-representation was never accorded Appellant.

**92.** *See* Tex. R. App. P. 47.1.

**93.** *See McKaskle,* 465 U.S. at 177 n.8, 104 S.Ct. at 950 n.8; *Batchelor,* 682 F.3d at 405 (both holding that denial of self-representation is structural error, is not subject to harm analysis, and requires automatic reversal). See also *supra* note 7.