# NO. 12-22-00164-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *NEIL AARON CARVER,*<br>*APPELLANT* | § | *APPEAL FROM THE 8TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *RAINS COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Neil Aaron Carver appeals his conviction for continuous sexual abuse of a child. In two issues, Appellant challenges the legal sufficiency of the evidence and argues that the trial court committed structural error by refusing to allow him "his absolute right to represent himself at trial[.]" We affirm the trial court's judgment.

### BACKGROUND

Jessica Cassett, an investigator with the Texas Department of Family and Protective Services (the Department), testified that she performed an investigation into Appellant's home after Appellant's daughter, S.C., was in an automobile accident with her mother, C.C., who was accused of neglectful supervision by driving while intoxicated. Cassett explained that S.C.'s mother was subsequently incarcerated, and S.C. was sent out of town to stay with Appellant's sister while Appellant was working in another state. Cassett learned that C.C. was previously charged with driving while intoxicated and suffered from a drinking problem, and she conducted a forensic interview with S.C. According to Cassett, during the interview, S.C. made an outcry of sexual abuse. Cassett testified that Appellant was "[r]eluctant for the child to have a forensic interview without him present."

Courtney Ma, a forensic interviewer with The Bridge Children's Advocacy Center, testified that it is common for children not to disclose as much to her as they might disclose to their counselors later on, since children often only make partial disclosures when beginning to speak about their experiences. Ma explained that during her interview with S.C.,[1] S.C. was consistent, used age-appropriate language, provided sensory details, and corrected Ma if Ma said something wrong. According to Ma, there was an incident when S.C. saw Appellant's "bad spot" and called it a "little peach worm." Ma testified that S.C. told her that when Appellant would grab her hand, she would "take her hand away and tuck it in the couch because she would know what he was going to be doing[.]" Additionally, Ma explained that S.C. "described that [Appellant] would always wake her up at night, and she would wake up to him grabbing her wrist, and he would be guiding it over to touch his bad spot[,]" and S.C. stated that this occurred "a lot of times." Ma testified that S.C. described these incidents as occurring both in Emory, Texas and out of town. According to Ma, S.C. described "cannonballs" as her diving her hand off the table, and Appellant taking her hand and moving it up and down. Furthermore, Ma testified that S.C. described putting toys in front of her door to create an obstacle course.

Licensed professional counselor Sylvia Hill testified that she counseled S.C. Hill testified that when she began counseling S.C., she "was told that [S.C.] had been molested by her father." According to Hill, S.C. was fourteen years of age or younger when she was in counseling. S.C. made statements to Hill about being abused, and Hill stated that S.C. "was very reluctant to talk about it[]" and "expressed extreme concern that it be understood that when it all started she was too little to know better." Hill testified that S.C. appeared to be embarrassed and ashamed. When asked whether S.C. described penetration by Appellant, Hill testified that S.C. told her that Appellant "put his fingers and hands into me." Hill explained that S.C. also described an incident when Appellant "put his fingers into her" while she was mowing the lawn with him during the summer. According to Hill, S.C. locked her bedroom door and put her toys on her bedroom floor to serve as an obstacle course. Hill further testified that S.C. described an incident when she was bitten by a dog and received stitches around Thanksgiving, and Appellant asked if he could kiss her where her stitches were and "again used his fingers to penetrate her[,]" and Hill inferred that S.C. was referring to her anus. Hill testified that S.C. told her these incidents occurred in Emory.

---

[1] Ma testified that S.C. was nine years old when the interview took place.

S.C., who was eleven years old at trial, testified via closed circuit television. S.C. testified that when she was bitten by a dog around Thanksgiving, she received stitches on her leg, arm, and buttocks. According to S.C., Appellant asked if she wanted him to kiss her stitches, and he "pulled [her] butt cheeks apart[]" and "kissed up [her] butt." S.C. explained that Appellant then "started using his fingers" on her "bad spot." S.C. testified that she locked her bedroom door until Appellant made her stop doing so, and she "put up an obstacle course" in her bedroom to block Appellant. S.C. explained that she believed Appellant made her stop locking her door so he could "do the thing." S.C. testified that the dog bite incident occurred in Emory. S.C. also testified that when she was riding the lawn mower with Appellant in Emory during the summer, Appellant slipped his hand underneath her panties and touched her "butt." In addition, S.C. testified that on one occasion, she tried to stop Appellant from "doing the thingy" by tucking her hands into the couch. S.C. explained that she would use her hand to "jump off [Appellant's] bad spot[,]" which she called "doing cannonballs," and Appellant grabbed her hand and tried to make her touch "his bad spot[,]" or "private," which she described as "a giant peach worm." S.C. testified that the cannonball incident did not occur in Emory. According to S.C., Appellant put his hand under her Pull-Up when they lived in Emory.

Appellant's sister, D.C., testified that S.C. sometimes stayed at her home. D.C. testified that S.C. denied being touched inappropriately. D.C. explained that she is close to her brother, and she does not believe he is capable of committing the crime. D.C. testified that she sometimes tracked Appellant's progress when he was traveling, and he was away on the December 2020 date set forth in the indictment. D.C. testified that her daughter was abused by her former husband, and S.C.'s allegations against Appellant are worded similarly to those made by D.C.'s daughter.

After all the witnesses testified, the trial judge stated on the second day of trial that Appellant's counsel indicated to the trial court that Appellant wanted to fire him. The trial judge stated, "there may be a disagreement as to trial strategy or whatever, but I'm not going to grant a request for you to be able to fire your attorney here on day two in your case in chief[.]" The following colloquy then took place:

> THE DEFENDANT: I'm sorry, I'm not allowed to fire my attorney?
> THE COURT: That's correct. Not at this stage.
> THE DEFENDANT: Even if I was to continue pro se?
> THE COURT: Especially if you were to continue pro se.
> . . .

3

THE DEFENDANT: I'd like . . . to fire him and move on, sir.
THE COURT: No, that's denied. . . .

The trial judge asked Appellant why he wanted to fire his attorney and advised Appellant that he could call additional witnesses if he wished to do so, and Appellant indicated that he wanted to recall witnesses, but his counsel refused. The trial judge then asked Appellant about his level of education. The trial judge also asked Appellant if he is familiar with the Texas Code of Criminal Procedure, the Texas Penal Code, and the Texas Rules of Appellate Procedure and advised him that he would be "bound by all of those." The trial judge warned Appellant that "it is a land mine, which is why you have attorneys[.]"

Ultimately, the jury convicted Appellant of continuous sexual abuse of a child and assessed his sentence at life in prison. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In issue one, Appellant challenges the sufficiency of the evidence supporting his conviction. Specifically, Appellant argues that the State failed to produce evidence that (1) he penetrated S.C.'s sexual organ, (2) he caused S.C. to contact his sexual organ "with intent to arouse or gratify anyone's sexual desire," and (3) he caused S.C. to contact his sexual organ in Rains County, as alleged in the indictment.

## Applicable Law

To establish the offense of continuous sexual abuse of a child, the State must prove that the defendant, during a period of time thirty or more days in duration, committed at least two acts of sexual abuse. TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2022). The statute defines an "act of sexual abuse" as indecency with a child and aggravated sexual assault, among other things. *Id*. § 21.02(c)(2), (4); *see id*. § 21.11(a)(1) (West 2019) (defining acts that constitute indecency with a child by contact, including causing the child to engage in sexual contact); *see id*. § 22.021(a)(1)(B)(i), (a)(2)(B) (West 2019) (enumerating acts that constitute aggravated sexual assault of a child, including causing penetration of the child's sexual organ by any means if the child is under fourteen years of age). The State need not prove the exact dates of the abuse; rather, the State need only prove that "there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." *Brown v. State*, 381 S.W.3d 565, 574 (Tex.

App.—Eastland 2012, no pet.); *see Lane v. State*, 357 S.W.3d 770, 773-74 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

When evaluating the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson*, 443 U.S. at 315-16, 99 S. Ct. at 2789; *see also Escobedo v. State*, 65 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd). The jury is the ultimate authority on the credibility of witnesses and the weight to be given to their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). A reviewing court must give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the jury resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778. The testimony of a child victim, standing alone and without corroboration, is sufficient to support a conviction for continuous sexual abuse of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b) (West Supp. 2022); *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.).

**Analysis**

To prove Appellant guilty of continuous sexual abuse of a child as charged in the indictment, the State was required to prove that during a period that was thirty or more days in duration, when Appellant was seventeen years of age or older and S.C. was younger than fourteen years of age, Appellant committed two or more acts of sexual abuse against S.C. in Rains County by (1) committing indecency with a child on or about January 1, 2018, by causing S.C. to touch his genitals, (2) committing aggravated sexual assault of a child by penetrating S.C.'s sexual organ with his finger, and (3) indecency with a child on or about December 1, 2020, by causing S.C. to

touch his genitals. *See* TEX. PENAL CODE ANN. § 21.02(b), 21.02(c)(2), (4), 21.11(a)(1), § 22.021(a)(1)(B)(i), (a)(2)(B).

The jury heard S.C. testify that Appellant used his fingers on her "bad spot" after she was bitten by a dog around Thanksgiving, that he touched her while she was riding a lawn mower with him in the summer, and that both incidents occurred in Emory. The jury also heard Ma testify that "a lot of times[,]" Appellant woke S.C. up, grabbed her wrist, and made her touch his genitals. Moreover, the jury heard Hill testify that S.C. revealed that Appellant put his fingers inside her while she was mowing the lawn with him and after she was bitten by a dog, both of which occurred in Emory. Ma testified that S.C. described the incidents as occurring both in Emory and elsewhere. S.C. also testified that Appellant penetrated her when she received stitches around Thanksgiving. In addition, S.C. described setting up an obstacle course after Appellant stopped allowing her to lock her bedroom door. Reviewing the evidence in the light most favorable to the verdict and giving full deference to the jury's responsibility to weigh evidence and to draw reasonable inferences from basic facts to ultimate facts, we conclude that a rational trier of fact could have found Appellant "guilty" beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Hooper*, 214 S.W.3d at 13; *Escobedo*, 65 S.W.3d at 6; *Penagraph*, 623 S.W.2d at 343; *see also* TEX. PENAL CODE ANN. § 21.02(b), 21.02(c)(2), (4), 21.11(a)(1), § 22.021(a)(1)(B)(i), (a)(2)(B). Accordingly, we overrule issue one.

## SELF-REPRESENTATION

In issue two, Appellant contends that the trial court erred by refusing to allow him to represent himself at trial.

### Standard of Review and Applicable Law

In all criminal prosecutions, the accused has the right to have the assistance of counsel for his defense. U.S. CONST. amend VI. If a criminal defendant elects to proceed without counsel, he has a constitutional right to do so. *See Indiana v. Edwards*, 554 U.S. 164, 170, 128 S. Ct. 2379, 2383, 171 L. Ed. 2d 345 (2008); *Faretta v. California*, 422 U.S. 806, 819-20, 95 S. Ct. 2525, 2533, 45 L. Ed. 2d 562 (1975). While a criminal defendant's right to counsel remains in effect until the defendant waives it, the defendant's right to self-representation is not triggered until it is asserted. *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541; *see also Lathem v. State*, 514 S.W.3d 796, 802 (Tex. App.—Fort Worth 2017, pet. ref'd). An accused must assert his right to self-representation in a

timely manner, namely, before a jury is impaneled. ***McDuff v. State***, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997); ***Blankenship v. State***, 673 S.W.2d 578, 585 (Tex. Crim. App. 1984); ***Birdwell v. State***, 10 S.W.3d 74, 77 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd)). We review the denial of a defendant's request to represent himself for abuse of discretion, viewing the evidence in the light most favorable to the trial court's ruling. ***Lathem***, 514 S.W.3d at 802.

**Analysis**

As discussed above, the record shows that Appellant did not express a desire to represent himself until after both the State and his counsel called witnesses for their cases in chief, long after the jury was impaneled. Therefore, Appellant's assertion of his right to self-representation was untimely. *See **McDuff***, 939 S.W.2d at 619; ***Blankenship***, 573 S.W.2d at 585; ***Birdwell***, 10 S.W.3d at 77; *see also **Faretta***, 422 U.S. at 835, 95 S. Ct. at 2541. Because Appellant did not timely assert his right to represent himself, the trial court did not abuse its discretion by denying his request. *See **McDuff***, 939 S.W.2d at 619; ***Blankenship***, 673 S.W.2d at 585; ***Lathem***, 514 S.W.3d at 802-03; ***Birdwell***, 10 S.W.3d at 77. Accordingly, we overrule issue two.

## DISPOSITION

Having overruled both of Appellant's issues, we ***affirm*** the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered January 19, 2023
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 19, 2023**

**NO. 12-22-00164-CR**

**NEIL AARON CARVER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 8th District Court

of Rains County, Texas (Tr.Ct.No. 6172)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is Therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*